**STATE of Tennessee, Appellee,**

v.

**Stanley REYNOLDS, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

Feb. 8, 1984.

Permission to Appeal Denied by Supreme Court May 29, 1984.

Patricia Horton, Asst. Public Defender, Ross Alderman, Jimmie Lynn Ramsaur, Asst. Public Defenders, Nashville, for appellant.

William M. Leech, Jr., Atty. Gen., David M. Himmelreich, Asst. Atty. Gen., Mary Housman, Tom Thurman, Asst. Dist. Attys., Nashville, for appellee.

OPINION

TATUM, Judge.

The defendant, Stanley Reynolds, was convicted of aggravated rape and sentenced to a term of 25 years in the State penitentiary. The only issue presented is whether the trial court erred in refusing him a continuance. After considering the issue, we conclude that the judgment of conviction must be affirmed.

The defendant was convicted of raping Winnie Ncube, a student at Fisk University in Nashville, in the early afternoon of April 26, 1981. The defendant does not question the sufficiency of the evidence. His defense was an alibi. Although not attacked, we will briefly outline the facts for a better understanding of this issue.

The crime occurred in Burrus Hall, the music building at the University. The victim went into a room in the building at about 12:30 P.M. to practice piano prior to her music class. At about 12:50 P.M., a man knocked on the door and asked for a match. When Ms. Ncube told him that she had no matches, he left. In a few minutes, the man returned and threatened her with an iron pipe. He beat her, tied her hands, and then raped her.

The man had threatened to kill the victim. For this reason, she feigned a willingness to see him again and wrote a false name and telephone number on a piece of paper which she gave to him. She left the building with her assailant and they were seen together. The victim gave an accurate, detailed description of the rapist to security personnel at Fisk University. A security officer located and arrested the defendant at a liquor store at 2:20 P.M.

The victim and others who saw her with her assailant immediately after the crime positively identified the defendant as the rapist. Another witness, Emma Jordan, entered the room where the crime was committed and saw the rapist and the victim. She did not know that criminal activity was taking place and thought that she had intruded in a private matter. The victim did not inform her of the rape because the victim was afraid that the man would kill both of them. Ms. Jordan did not look at the man's face and could make no identification.

The motion to continue was premised on a desire of defense counsel to interview Evelyn Owens. To place the issue in context, it is necessary that we briefly discuss pretrial proceedings. On August 18, 1982, the defendant filed a request for discovery. One of the inquiries was whether any individual who had been requested to make an identification had failed to identify the defendant. The State responded in the negative, relying upon a report by Mr. Thomas Stephens of the Fisk University Department of Safety and Security. This report specifically stated that Evelyn Owens had identified the defendant as being a person she saw in Burrus Hall.

About one week before trial, the defendant filed a pretrial motion to suppress identification evidence as being suggestive. The hearing on the motion was not had until immediately before trial. At the suppression hearing, Stevens testified that Owens had identified someone other than the defendant at a photographic line-up. Detective Bawcum also testified that Ms. Owens picked the photograph of another person in the photographic line-up. The photograph of the defendant used in the line-up was about two years old.

Defense counsel had not attempted to talk with Ms. Owens. She had left Fisk University and the State furnished defense counsel her address in Atlanta. By the time of the hearing on the motion to suppress, she had moved to Illinois. The Attorney General furnished the defense counsel her telephone number and he attempted to telephone her after the completion of the suppression hearing and before the beginning of trial. He received no answer. He moved for a continuance to enable him to interview Ms. Owens. The motion was overruled by the trial judge.

Before the jury, Stephens testified that Ms. Owens did not identify anyone at the photographic line-up. He did not explain how he acquired this knowledge; he said that he was not present when the line-up was conducted and that Detective Bawcum, who conducted the line-up, did not so inform him.

At trial, Detective Bawcum testified as follows:

"Q. With regard to the witness, Evelyn Owens, what result occurred?

A. She selected another subject. The subject that she was looking for in the lineup was a man that she had seen earlier on the campus. She was inside practicing piano when the assault took place. *The subject that she was looking for in the lineup was a man that she had seen wearing a wine colored short, sleeved T-shirt. Further investigation showed that she did not even see the*

*suspect that we were looking for.* She was just—(Emphasis supplied)

Q. Go ahead.

A. She picked out a picture of a man that resembled a man that she had seen on campus earlier.

Q. Was her identification of that picture a positive identification?

A. No, she said that the picture that she selected—said that this picture looked like him. His lips were a little bit bigger or there was some discretion (sic) about the lips and she wasn't sure about the facial hair, I believe."

The defendant says that in denying the motion for a continuance, the trial court condoned the State's suppression of exculpatory evidence in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). He states that the *Brady* decision requires the State "to make a due and diligent inquiry of law enforcement officers to determine whether exculpatory evidence is present."

We do not understand the *Brady* case to require the State to investigate for the defendant. The person who made the arrest was Mr. Thomas Stephens of the Security Department of Fisk University. The State relayed to the defendant the information furnished to it by Mr. Stephens in his report; that is, that Ms. Owens identified the defendant. It later developed that Mr. Stephens had no knowledge of the matter and later gave two other versions of it.

It appears from the testimony of Detective Bawcum, that Ms. Owens did not see the rapist; that the man that she was identifying was someone other than the rapist and dressed differently from him.

Had Ms. Owens actually seen the rapist and thought that it was someone other than the defendant, this fact should have been made known to us and the trial court by an affidavit filed with the motion for a new trial or evidence submitted at the time the motion for a new trial was considered by the trial court. The defendant had ample time after trial to demonstrate that the testimony of this witness would have benefited him. We are not convinced that Ms.

Owens saw the rapist at any time or that she had any knowledge as to the defendant's guilt or innocence.

The defendant states in his brief that the State furnished him the address of Ms. Owens in Atlanta. Prior to the suppression hearing, the prosecuting attorney had no reason to suspect that the testimony of Ms. Owens would have benefited the defendant. There remains considerable doubt that it would. The State failed to call Ms. Owens to testify because of the belief that her testimony would be cumulative and because of the difficulty in procuring her presence in the State. The defendant knew of the possibility of the materiality of her testimony and had opportunities equal with those of the State in investigating it and of procuring it. We hold that the State did not suppress evidence in violation of the *Brady* doctrine.

The defendant cites *Dickerson v. Alabama,* 667 F.2d 1364 (11th Cir.1982), *cert. denied,* 459 U.S. 878, 103 S.Ct. 173, 74 L.Ed.2d 142. In that case, the trial judge refused to grant a continuance because a police officer, who had been subpoenaed by the defendant, refused to come to court. Although the facts of that case are not analogous to the case at bar, we think that the five factors enumerated will be helpful in determining whether the trial court should have granted a continuance to interview or procure Ms. Owens as a defense witness. The first factor is the diligence of defense counsel in interviewing the witness and attempting to procure her attendance. The second factor is the probability of securing the testimony within a reasonable time. The third factor is the specificity of the person's expected testimony. The fourth factor is the degree to which the expected testimony is favorable to the defendant. The fifth factor is the uniqueness, or the cumulative nature, of the expected testimony. None of these factors weigh in favor of the defendant.

We find that defense counsel made no attempt to interview this witness or to procure her attendance prior to trial. Counsel

was aware that this person was a possible witness and had her address.

The record does not indicate whether there is a probability of securing the testimony of the witness within a reasonable time. The witness lived in Illinois at the time of the trial but could not be reached by telephone. As previously stated, it has not been made to appear to us that the defendant would benefit by the presence of this witness even if a retrial were ordered.

The expected testimony of this witness is very vague. Mr. Stephens, who has only hearsay knowledge, gave three versions of her expected testimony. Detective Bawcum indicated that she had no knowledge that would be relevant to the issues. No attempt was made to enlighten this court with regard to the third factor in the motion for a new trial.

In the event the witness would testify that the defendant was not the person she saw in Burrus Hall, it would not be completely unique. Hearsay evidence was admitted at trial quoting her as saying that the defendant was not the same person she saw. It might well be that the hearsay evidence, inferring that Ms. Owens saw the rapist and did not identify the defendant, benefited him more than the actual testimony of the witness.

We do not find that the defendant was deprived of compulsory process, due process, or any other constitutional right. Neither do we find that the trial court abused its discretion in denying the continuance.

The judgment below is affirmed.

DWYER and BYERS, JJ., concur.