IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

NOVEMBER 1997 SESSION



FILED

April 24, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| JIMMY EISOM, | * | C.C.A. # 02C01-9703-CC-00105 |
| Appellant, | * | LAKE COUNTY |
| VS. | * | Hon. Joe G. Riley, Jr., Judge |
| STATE OF TENNESSEE, | * | (Post-Conviction) |
| Appellee. | * | |

For Appellant:

William D. Massey
3074 East Street
Memphis, TN  38128

John E. Herbison
2016 Eighth Avenue, South
Nashville, TN  37204

For Appellee:

John Knox Walkup
Attorney General & Reporter

Deborah A. Tullis
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN  37243-0493

C. Phillip Bivens
District Attorney General
P.O. Drawer E
Dyersburg, TN  38024

OPINION FILED:_____

AFFIRMED

GARY R. WADE, JUDGE

## OPINION

The petitioner, Jimmy Eisom, appeals the trial court's denial of post-conviction relief. He was convicted of second degree murder and received a life sentence. This court affirmed and the supreme court denied review. State v. Jimmy Eisom and Michael D. Williams, No. 5 (Tenn. Crim. App., at Jackson, Nov. 12, 1986), app. denied, (Tenn., Mar. 9, 1987). In 1989, the petitioner filed his first petition for post-conviction relief alleging ineffective assistance of counsel. The trial court denied relief. This court affirmed. Michael Williams and Jimmy Eisom v. State, No. 02C01-9107-CC-00154 (Tenn. Crim. App., at Jackson, June 3, 1992).

In this second petition, filed May 10, 1996, the petitioner claims that his second degree murder conviction should be set aside and that he should be granted a new trial because the state failed to correct false testimony and failed to disclose exculpatory evidence. In denying relief, the trial court determined that the nature of the testimony at issue did not require either a disclosure or correction. It also ruled that the claims were barred by the statute of limitations and by the doctrine of waiver.

We affirm the judgment of the trial court.

A brief review of the convicting evidence, as taken from our prior opinion on direct appeal, is helpful:

> The defendants were both inmates at the Lake County Regional Correctional Facility as was the victim, Bruce Easley. The defendants were convicted of stabbing Easley to death.
> Both the State and the defendants introduced several witnesses who testified that they saw all or part of the commission of this homicide. The State's witnesses established that the victim, Easley, was in back of Guild # 3 (dormitory) when the defendants approached him. Eisom approached the victim from the

2

front and Williams approached the victim from the rear. The victim started to walk around Eisom and Eisom stopped him. After a brief conversation between Eisom and the victim, Eisom commenced stabbing the victim in the front of his body. The victim moved backwards and Williams proceeded to stab the victim in the back. The defendants then wiped their knives in the grass and ran. The victim walked toward the clinic and fell.

\*\*\*

The State's witnesses testified that the victim made no assault on either of the defendants.

The defense witnesses testified that the victim had made homosexual advances toward Williams on previous occasions. At the time of the homicide, ... the victim pulled a knife and made an assault on Williams. Williams drew his knife and began "swinging" it towards the victim in self-defense. Eisom attempted to stop the fight without success. Eisom had no knife according to defense witnesses.

The jury resolved the sharp conflict in the evidence.

State v. Eisom, slip op. at 2-3.

Donnie Kirkland, convicted of first-degree murder and serving a life sentence in the Department of Corrections, was a state witness at the trial. At the post-conviction hearing, he testified that he was asked whether he had been promised anything in exchange for his testimony. He recalled that his response was that he had been "promised protection" and nothing more. He insisted this portion of his trial testimony was false.

Kirkland claimed that on the day after the stabbing, he told investigators that he did not see anything. He contended that he was shown a statement of two other inmates, Ralph Miller and Michael Nolen, both of whom later testified at trial, and was asked by officers to write out a statement to resemble those. He complied with their request. Kirkland testified at the post-conviction hearing that he did not see the stabbing and that he swore falsely at trial "[b]ecause they told me that would give me a time cut."

3

Kirkland also claimed that the District Attorney's office hinted that they would seek his transfer to federal prison or to another state prison system. He contended that on four or five occasions before and after the petitioner's trial, then Assistant District Attorney General Mack McCoin gave him twenty dollars. He testified that he was also given special phone privileges in that he "was allowed to use the phone ... any time [he] wanted to." He claimed that he used the District Attorney's credit card to make long distance phone calls about ten times.

Kirkland contended that when he met with prosecutors several days before trial so that they could go over his testimony, he acknowledged that his statement was not true. Kirkland testified that he spoke with his own attorney, Don Reed, about the matter to make sure he "didn't get messed out of [his] time credit." Kirkland remembered that he contacted the petitioner at his first opportunity in July of 1996 to advise him that he would be willing to testify at the evidentiary hearing.

The petitioner, who conceded that he had filed a prior petition for post-conviction relief which was ruled upon in 1991, testified that he did not learn until 1995 or 1996 that the state might have failed to correct the false testimony and might have failed to reveal exculpatory evidence. He claimed that his appointed counsel in the first petition had no knowledge that the inmates had any evidence helpful to him.

Mark Fowler, the petitioner's trial counsel, testified that he did not recall anyone saying that Kirkland may not have been present during the stabbing. Attorney Fowler specifically recalled asking the state to disclose any deals made with witnesses who were going to testify at the trial.

4

Mack McCoin, who at the time of this hearing was in the private practice of law, participated in the prosecution of the petitioner as an assistant district attorney general. He testified that Kirkland had never given any indication that his pretrial statement was false. Attorney McCoin described Kirkland at the time of trial as a fearful, young, white male serving a life sentence. He remembered that the homicide "occurred between several blacks in the prison" and he recalled there was considerable racial polarization in the prison. While McCoin acknowledged that he offered protection for Kirkland and discussed moving him to a different prison if necessary, he insisted that he had made no promises of a sentence reduction or work release. While conceding it was possible that Kirkland had been given small amounts of money for personal items, McCoin asserted there was never an agreement that he would be paid for his testimony. He did acknowledge that Kirkland was allowed to call his mother and his attorney Reed regularly, but denied that the phone privileges were offered in exchange for testimony. While admitting that it was likely the state paid for the phone calls, McCoin denied providing Kirkland with his credit card number.

Attorney McCoin did acknowledge that the District Attorney's office wrote a letter, dated January 2, 1986, to Steve Norris, Commissioner of Corrections, which included the following:

> Before testifying Kirkland was guaranteed that he would be taken out of the state system under the interstate compact or transferred to a Federal Prison, if accepted. His preference is for a federal prison and your department, through Ron Bishop, assured Assistant District Attorney[s] Ingram and McCoin that every effort would be made to effectuate his preference for a federal facility. ...
> With the approval of Ron Bishop, inmate Michael Nolan was promised that he would be transported to Knoxville work release with a back up of Shelbyville work release if there was an incompatible at Knoxville.

(Emphasis in original).

5

He also admitted that in 1988, while still employed by the District Attorney's office, he wrote a letter to the Board of Paroles requesting leniency for Kirkland. McCoin conceded that parole qualified as a form of sentence reduction. He insisted, however, that the letter to the Parole Board was written only because he felt Kirkland deserved consideration. He specifically recalled that after the trial Kirkland spent considerable time in "the hole" because that was the only form of protection the state could or would offer. He claimed that he tried to help with parole well after the petitioner's trial because he felt the Department of Corrections had treated Kirkland badly.

Attorney William Randolph testified that he had been appointed to represent the petitioner in the first petition for post-conviction relief. He recalled that the District Attorney's office maintained an open file policy when he filed the petition, but he had no recollection of either reviewing the file or seeing copies of the letters written to the Commissioner of Corrections or the Parole Board. He recalled hearing rumors that Kirkland had been promised a transfer to the federal system, but he could never find any proof of that.

Roger Hughes, an investigator for the TBI, testified that he had investigated the Easley murder and recalled his interview of Kirkland. Agent Hughes testified that Kirkland never advised him that he did not witness the stabbing.

Inmate Michael Nolen did not testify at the evidentiary hearing. At trial, however, he testified that he was to be "put in protection somewhere" by the state and that he would be "transferred for [his] own protection." The letter from the District Attorney's office to the Department of Corrections confirmed that Nolen was guaranteed he would receive work release.

6

At the conclusion of the evidentiary hearing, the trial court made the following findings of fact:

**Donnie Kirkland's testimony**
Petitioner alleges the state failed to disclose the full extent of promises made to witness Donnie Kirkland and failed to correct his false testimony. In response to trial counsel's request for "the nature of any preferential treatment or other general consideration" promised state witnesses, the state responded that the only promise was one of protection which could include transfers. Kirkland indicated in his testimony that he had been guaranteed protection.

Prior to trial there had been discussions by state officials with Kirkland about the possibilities of transferring him to another state under the Interstate Compact Act or perhaps being transferred to a federal prison. The failure of the state to disclose these possible locations is not a failure to disclose exculpatory evidence. There has been no showing that there is a reasonable probability the result would have been any different if these details had been disclosed. Furthermore, Kirkland's testimony stating that the only promise was one of protection was not such that would require the state to correct this testimony by giving further details of possible locations of transfers.

Petitioner also alleges there were various other promises made to Kirkland, including clemency, time cuts, monetary payments, phone privileges, etc. Although there may have been phone privileges extended to Kirkland to speak with his attorney, this information would not be required to be revealed as exculpatory evidence. Other allegations concerning promises made to Kirkland are not supported by clear and convincing evidence. Likewise, the allegation that the prosecuting attorneys had been told that Kirkland's pretrial statement was false is not supported by clear and convincing evidence.

Accordingly, the allegations as to the state's failure to disclose exculpatory evidence relating to Kirkland are without merit.

Furthermore, this issue has been waived by the failure to raise the issue in the first post-conviction relief hearing. The district attorney maintained an open-file policy at the time of the first post-conviction relief hearing. The file contained the 1986 letter from the district attorney general relating to possible transfers of Kirkland. The file also contained the 1988 letter from the assistant district attorney general recommending parole

7

> consideration. This issue has been waived pursuant to
> T.C.A. § 40-30-206(g). Furthermore, the three-year
> statute of limitations expired prior to 1995.

(Emphasis added).

The trial court made almost identical findings regarding allegations about Michael Nolen.

I

The petitioner's first issue is that the state should have corrected the false testimony of trial witnesses Donnie Kirkland and Michael Nolen. See Giglio v. United States, 405 U.S. 150 (1972). He claims that both witnesses testified at trial that they had merely been promised "protection." He claims their testimony was misleading and contends that the evidence at the post-conviction hearing established that Kirkland had been "guaranteed that he would be taken out of the state system ... or transferred to a Federal Prison" and that Nolen had been "promised that he would be transported to Knoxville work release" (citing the letters written by the District Attorney's office post-trial). He argues that the prosecutors failed to correct this misleading testimony and, in consequence, that he should receive a new trial.

Under our statutory law, the petitioner bears the burden of proving his allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f). On appeal, the findings of fact made by the trial court are conclusive and will not be disturbed unless the evidence contained in the record preponderates against them. Brooks v. State, 756 S.W.2d 288, 289 (Tenn. Crim. App. 1988). The burden is on the petitioner to show that the evidence preponderates against those findings. Clenny v. State, 576 S.W.2d 12, 14 (Tenn. Crim. App. 1978).

8

"[T]he state's knowing use of false testimony to convict an accused is violative of the right to a fair and impartial trial as embodied in the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Article I, §§ 8 and 9 of the Tennessee Constitution." State v. Spurlock, 874 S.W.2d 602, 617 (Tenn. Crim. App. 1993). When a state witness gives false testimony either on direct or during cross-examination, the state has the absolute duty to correct that testimony. Giglio, 405 U.S. 150; Napue v. Illinois, 360 U.S. 264 (1959). In our view, the evidence did not preponderate against the trial court's conclusion that any specifics relating to the promises of protection did not need to be corrected or the determination that the phone privileges did not need to be reported.

Also, the doctrine of waiver would bar the claim. So would the statute of limitations. The trial judge made the specific finding that the letter detailing the promises of transfer was in the District Attorney's case file when the first post-conviction petition was filed. He also found as fact that the District Attorney's office maintained an open file policy. The evidence does not preponderate otherwise. Brooks, 756 S.W.2d at 289. Thus, these claims were available and could have been presented in the first petition.

The post-conviction statute in effect when the petition was filed defines waiver:

> (g) A ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented unless:
>
> (1) The claim for relief is based upon a constitutional right not recognized as existing at the time of trial if either the federal or state constitution requires retroactive application of that right; or
>
> (2) The failure to present the ground was the result of

9

> state action in violation of the federal or state
> constitution.

Tenn. Code Ann. § 40-30-206(g). Our supreme court has held that "the rebuttable presumption of waiver is not overcome by an allegation that the petitioner did not personally, knowingly, and understandingly fail to raise a ground for relief." House v. State, 911 S.W.2d 705, 714 (Tenn. 1995). The court continued, "[w]aiver in the post-conviction context is to be determined by an objective standard under which a petitioner is bound by the action or inaction of his attorney." Id. Clearly, because the prosecutor maintained an open file policy during the time the first petition was filed, this claim was available at that time. There was no state action which impermissibly barred the petitioner from previously asserting this claim during his first petition. See Tenn. Code Ann. § 40-30-206(g)(2).

The new Post-Conviction Procedure Act provides that the petitioner "must petition for post-conviction relief under this part within one (1) year of the date of the final action of the highest state appellate court to which an appeal is taken or, if no appeal is taken, within one (1) year of the date on which the judgment became final." Tenn. Code Ann. § 40-30-202(a). The supreme court denied review in this case on March 9, 1987. Thus, this petition, filed in 1996, was not timely.

Originally, the Post-Conviction Procedure Act of 1967 did not include a statute of limitations. Effective July 1, 1986, the General Assembly adopted a three-year statute of limitations. Tenn. Code Ann. § 40-30-102 (repealed 1995). In consequence, any petitioner whose judgment had become final before July 1, 1986, had only three years thereafter to file a petition for post-conviction relief. State v. Masucci, 754 S.W.2d 90 (Tenn. Crim. App. 1988).

Here, the petitioner was subject to that three-year statute of limitations

beginning "the date of the final action of the highest state appellate court to which an appeal [was] taken...." Tenn. Code Ann. § 40-30-102 (repealed 1995). The 1995 amendment did not enlarge the time within which this petitioner could file, as "the enabling provision ... is not intended to revive claims that were barred by the previous [three-year] statute of limitations." Carter v. State, 952 S.W.2d 417, 420 (Tenn. 1997).

In Burford v. State, 845 S.W.2d 204, 208 (Tenn. 1992), our supreme court held that in certain situations application of the statute of limitations in a post-conviction proceeding would violate due process. In determining whether there has been a violation of due process, the essential question is whether the time period allowed by law provides petitioner a fair and reasonable opportunity to file suit. Id. In Burford, the petitioner could not file within the three-year limitation absent a determination on his prior post-conviction petition. Our supreme court ruled that Burford was "caught in a procedural trap and unable to initiate litigation ... despite the approach of the three-year limitation." Id. There was no such trap here.

In Sands v. State, 903 S.W.2d 297 (Tenn. 1995), our supreme court further defined how to apply the Burford test. Courts must:

> (1) determine when the limitations period would normally have begun to run; (2) determine whether the grounds for relief actually arose after the limitations period would normally have commenced; and (3) if the grounds are "later-arising," determine if, under the facts of the case, a strict application of the limitations period would effectively deny the petitioner a reasonable opportunity to present the claim. In making this final determination, courts should carefully weigh the petitioner's liberty interest in "collaterally attacking constitutional violations occurring during the conviction process," against the state's interest in preventing the litigation of "stale and fraudulent claims."

Sands, 903 S.W.2d at 301 (citations omitted) (quoting Burford, 845 S.W.2d at 207,

11

208).

By the use of these guidelines, we have first determined that the limitations period for this petitioner's convictions began in March, 1987, when the supreme court denied the application for permission to appeal. Second, the petitioner's Giglio claim was based on evidence available in the District Attorney's file when the petitioner filed his first post-conviction petition in 1989. The petitioner, through his attorney, had access to this file. Thus, the violations could not qualify as late arising grounds. The record indicates that nothing prevented the petitioner from raising the issue before the three-year period of opportunity expired.

This court has held that the state's suppression of evidence may qualify as a Burford exception to the statute of limitations. Wooden v. State, 898 S.W.2d 752 (Tenn. Crim. App. 1994). Even if the state had failed to disclose certain of the relevant evidence before trial, it maintained an open file policy during the time the first post-conviction petition was filed and this information was available to the petitioner or his counsel in 1989.

II

The petitioner also argues that the state suppressed exculpatory information. See Brady v. Maryland, 373 U.S. 83 (1963). He specifically contends that the following exculpatory material should have been disclosed:

> (a) that the state had promised its witnesses transfers to more comfortable prison facilities;
>
> (b) that Kirkland was furnished cash before and after trial;
>
> (c) that Kirkland received special phone privileges; and
>
> (d) that Kirkland initially stated he did not witness the stabbing and that he was advised to write a statement

12

similar to those given by other witnesses.

In Brady, the United States Supreme Court ruled that the prosecutor has a duty to furnish exculpatory evidence to the defendant. Exculpatory evidence may pertain to the guilt or innocence of the accused and/or the punishment which may be imposed if the accused is convicted of the crime. State v. Marshall, 845 S.W.2d 228 (Tenn. Crim. App. 1992).

Any "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." Brady, 373 U.S. at 87. This duty to disclose extends to all favorable information irrespective of whether the evidence is admissible. Branch v. State, 469 S.W.2d 533 (Tenn. Crim. App. 1969). And, while Brady does not require the state to make an investigation for the defendant, it does burden the prosecution with the responsibility of disclosing statements of witnesses favorable to the defense. State v. Reynolds, 671 S.W.2d 854, 856 (Tenn. Crim. App. 1984). The duty does not extend to information that the defense already possesses or is able to obtain or to information not in the possession or control of the prosecution. Banks v. State, 556 S.W.2d 88, 90 (Tenn. Crim. App. 1977).

Before this court may find a due process violation under Brady, the following elements must be established:

> (1) the defendant must have requested the information (unless the evidence is obviously exculpatory, in which case the state is bound to release the information whether requested or not);
>
> (2) the state must have suppressed the information;
>
> (3) the information must have been favorable to the

13

accused; and

(4) the information must have been material.

State v. Edgin, 902 S.W.2d 387, 390 (Tenn. 1995) (as amended on rehearing); see also Kyles v. Whitley, 514 U.S. 419 (1995) (setting forth the standard for determining materiality).

As previously indicated, any claim based on promises of transfers to different prison facilities has been waived and is also barred by the statute of limitations. The trial court, which characterized the phone privileges as merely allowing Kirkland to talk to his attorney, ruled that this information would not qualify as exculpatory evidence. We tend to agree. That Kirkland was allowed to speak with his attorney or his mother is not exculpatory evidence. See Edgin, 902 S.W.2d at 390. As for the remaining allegations, the trial court, after hearing testimony pro and con, found the particular claims were not established by clear and convincing evidence. Because the trial judge who sees and hears the witnesses is in a better position to determine their credibility, his factual findings are binding on this court unless the evidence preponderates otherwise. Brooks, 756 S.W.2d at 289. It does not.[1]

Accordingly, the judgment of the trial court is affirmed.

---

[1]This petition was filed under the new Act, which allows for only one petition. The appropriate procedure would be to file a motion to reopen. See Tenn. Code Ann. § 40-30-202(c). The grounds for filing a motion to reopen are very limited. One may be filed only if one of the following conditions are established: a new constitutional rule is established; new scientific evidence shows actual innocence; or an enhanced sentence is no longer valid because a prior conviction has been found invalid. Tenn. Code Ann. § 40-30-217(a). The petitioner filed a previous petition which was resolved on the merits. Under Tenn. Code Ann. § 40-30-202(c), the trial court could have summarily dismissed this second petition. See generally Fletcher v. State, 951 S.W.2d 378 (Tenn. 1997) (discussing the appropriate procedure for filing a motion to reopen and ruling the supreme court has jurisdiction to review the trial court's dismissal of a motion to reopen). No grounds are alleged in this petition which would meet the strict requirements for a motion to reopen.

14

_____
Gary R. Wade, Judge

CONCUR:


_____
Paul G. Summers, Judge


_____
David G. Hayes, Judge