IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

JANUARY 1998 SESSION

FILED

May 27, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| RONALD DAVID DUKES and | * | C.C.A. NO. 03C01-9703-CC-00112 |
| EDGAR VIRGIL DUKES, III, | * | UNION COUNTY |
| Appellants, | * | |
| VS. | * | Hon. Lee Asbury, Judge |
| STATE OF TENNESSEE, | * | (Post-conviction) |
| Appellee. | * | |

For Appellants:

Douglas A. Trant
Attorney for Ronald David Dukes
900 S. Gay Street
Suite 1502
Knoxville, TN 37902

Michael L. DeBusk
Attorney for Edgar Virgil Dukes, III
5344 North Broadway
Knoxville, TN 37918

For Appellee:

John Knox Walkup
Attorney General & Reporter

Sandy C. Patrick
Cordell Hull Building, Second Floor
425 Fifth Avenue North
Nashville, TN 37243-0493

Clifton H. Sexton
Assistant District Attorney General
P.O. Box 10
Huntsville, TN 37756

OPINION FILED: _____

AFFIRMED

GARY R. WADE, JUDGE

<u>OPINION</u>

The petitioners, Ronald David Dukes and Edgar Virgil Dukes, III, were convicted of the robbery, kidnapping and murder of the victim, Hollis Kitts. The trial court ordered Ronald Dukes to serve consecutive life sentences for first degree felony murder and armed robbery; a sentence of life plus five years was imposed for kidnapping to commit robbery by the use of a firearm. Edgar Dukes received identical sentences with the exception that the terms are to be served concurrently.

In this appeal of right, the petitioners claim that they are entitled to a new trial or reduction in sentence because the state suppressed exculpatory evidence in violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963). In the alternative, the petitioners argue that the facts presented at the post-conviction hearing would have warranted the grant of a motion to reopen as provided by statute. <u>See</u> Tenn. Code Ann. § 40-30-217. We disagree and affirm the judgment of the trial court.

The victim operated a sporting goods store in Union County. On December 23, 1976, the petitioners and their accomplice, Robert Sands, who was tried separately, robbed the store of cash and firearms and abducted the victim. The body was discovered several days later along a road in Knox County. The victim had been shot once in the head. The petitioners confessed to their participation in an "insurance scam" which, they claimed, included the victim as a perpetrator. Later, at trial, each of the petitioners denied being present when the victim was robbed, kidnapped, and shot to death.

On direct appeal, this court affirmed the convictions.[1] <u>Dukes v. State</u>, 578 S.W.2d 659 (Tenn. Crim. App. 1978), <u>app. denied</u>, (Tenn. 1979). On April 12,

---

[1]This court vacated a conviction for using a firearm to commit kidnapping.

1985, the petitioners filed their first petitions for post-conviction relief alleging ineffective assistance of counsel and due process violations.

At the first post-conviction hearing, Ronald Dukes testified that his trial counsel was ineffective for failing to use his cousin, Larry Sharp, as a witness. He claimed that Sharp would have testified that Sands admitted to killing the victim. Sharp, a witness at the evidentiary hearing, testified that he had a telephone conversation with Sands prior to their trial during which Sands admitted responsibility for the murder. Sharp testified that he had been prepared to give this testimony at their trial. Attorney William Davidson, trial counsel for the petitioners, recalled that until the trial began, the defense theory was that the robbery and kidnapping was an "insurance job" and that the victim "was in on it also, and that Mr. Sands had planned all this .... They had no knowledge whatsoever that Mr. Sands was going to shoot the man in the back of the head ...." Davidson testified that when the trial began, the petitioners insisted on a change of strategy to an alibi defense, a theory that conflicted with the petitioners' pretrial statements to law enforcement. Davidson expressed particular concern because the alibi defense was contrary to the results of his own investigation. The trial court denied the initial petition for post conviction relief. This court affirmed and the supreme court denied review. Edgar Virgil Dukes, III, and Ronald David Dukes v. State, C.C.A. No. 25, slip op. at 1 (Tenn. Crim. App., at Knoxville, Aug. 25, 1986), app. denied, (Tenn. Nov. 24, 1986).

On December 17, 1987, Ronald Dukes filed a second petition for post-conviction relief alleging double jeopardy and Brady violations. The trial court entered a summary dismissal. On appeal, this court found the double jeopardy claim to be previously determined but reversed and remanded for a hearing on the

3

<u>Brady</u> claim. <u>State v. Ronald David Dukes</u>, C.C.A. No. 26, slip op. at 8 (Tenn. Crim. App., at Knoxville, Apr. 4, 1989). In May of 1989, Edgar Dukes filed a second petition for post-conviction relief alleging similar constitutional violations. Some six years later and after repeated continuances, a consolidated evidentiary hearing was held, after which the trial court denied relief. Although Ronald Dukes filed a timely notice of appeal, Edgar Dukes did not file his notice within the statutory time period. This court may, however, waive the timely filing of the notice in the interest of justice. <u>Smith v. State</u>, 873 S.W.2d 5 (Tenn. Crim. App. 1993).

I

The petitioners contend that the state failed to disclose exculpatory information in violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963). They allege two separate violations:

> (a)     the state did not inform the petitioners prior to trial that Sands was a suspect in two other murders according to a 1977 report; and
>
> (b)     the state had an obligation to inform petitioners about statements given by James Potter to FBI officials in 1981, some four years after trial.

Although we address the petitioners' issues on the merits, we agree with the trial court's assessment that the <u>Brady</u> issues have been waived. The post-conviction statute in effect when these petitions were filed defines waiver:

> (b)(1)  A ground for relief is waived if the petitioner knowingly and understandingly failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented.
>
> (2)  There is a rebuttable presumption that a ground for relief not raised in any such proceeding which was held was waived.

Tenn. Code Ann. § 40-30-112(b) (repealed 1995).

4

Our supreme court has held that "the rebuttable presumption of waiver is not overcome by an allegation that the petitioner did not personally, knowingly, and understandingly fail to raise a ground for relief." House v. State, 911 S.W.2d 705, 714 (Tenn. 1995). "Waiver in the post-conviction context is to be determined by an objective standard under which a petitioner is bound by the action or inaction of his attorney." Id. Both the report and Potter's statement were in the possession of TBI agents in 1983. The petitioners' first post-conviction petitions were filed two years later. The petitioners have not presented any evidence to rebut the presumption of waiver.

In the landmark case of Brady v. Maryland, the United States Supreme Court ruled that the prosecutor has a duty to furnish exculpatory evidence to the defendant. 373 U.S. at 87. Exculpatory evidence may pertain to the guilt or innocence of the accused and/or the punishment which may be imposed if the accused is convicted of the crime. State v. Marshall, 845 S.W.2d 228 (Tenn. Crim. App. 1992). The Supreme Court in Brady reasoned that a fair trial and a just result could not be obtained when, at the time of trial, the prosecution suppressed information favorable to the accused. Brady, 373 U.S. at 87-88.

Any "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." Brady, 373 U.S. at 87. This duty to disclose extends to all favorable information irrespective of whether the evidence is admissible. Branch v. State, 469 S.W.2d 533 (Tenn. Crim. App. 1969). Information useful for impeaching a witness is considered favorable information that the prosecutor may not withhold. Giglio v. United States, 405 U.S. 150 (1972). And, while Brady does not require the state to

5

investigate for the defendant, it does burden the prosecution with the responsibility of disclosing statements of witnesses favorable to the defense. State v. Reynolds, 671 S.W.2d 854, 856 (Tenn. Crim. App. 1984). The duty does not extend to information that the defense already possesses or is able to obtain or to information not in the possession or control of the prosecution. Banks v. State, 556 S.W.2d 88, 90 (Tenn. Crim. App. 1977).

Before this court may find a due process violation under Brady, the following elements must be established:

> 1. The defendant must have requested the information (unless the evidence is obviously exculpatory, in which case the State is bound to release the information whether requested or not);
>
> 2. [t]he State must have suppressed the information;
>
> 3. [t]he information must have been favorable to the accused; and
>
> 4. [t]he information must have been material.

State v. Edgin, 902 S.W.2d 387, 390 (Tenn. 1995) (as amended on rehearing).

In Edgin, our supreme court adopted the following standard for materiality:

> [T]here is constitutional error "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." ... "[T]he touchstone of materiality is a 'reasonable probability' of a different result, and the adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A 'reasonable probability' of a different result is accordingly shown when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'"

Edgin, 902 S.W.2d at 390-91 (quoting Kyles v. Whitley, 115 S. Ct. 1555, 1566

(1995)).

To prevail on a petition for post-conviction relief, a petitioner must prove a constitutional violation by a preponderance of the evidence. State v. Spurlock, 874 S.W.2d 602, 610 (Tenn. Crim. App. 1993). This court is bound by the post-conviction court's findings unless the evidence preponderates otherwise. Butler v. State, 789 S.W.2d 898, 899 (Tenn. 1990). This court may not reweigh or reevaluate the evidence or substitute its inferences for those drawn by the post-conviction court. Moreover, questions concerning the credibility of witnesses and weight and value to be given their testimony are for resolution by the post-conviction court. Black v. State, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990).

(a)

The petitioners claim that the state suppressed a report, obtained by Knoxville police on January 3, 1977, implicating Sands in a murder in Kentucky and a murder in Indiana. Sands, who testified at the post-conviction hearing, denied any involvement in the murders and stated he had never been investigated in the matters. The petitioners testified they only recently learned of the report. After hearing testimony and considering the report, the trial court ruled that the report was likely inadmissable and not exculpatory.

Applying the principles of Edgin, we conclude that the petitioners made a general, pre-trial discovery request for exculpatory or favorable information and that the state suppressed the report. If, however, we were to find the report to be favorable to the petitioners, it does not matter. Sands' suspected involvement in other murders was irrelevant in this case. Moreover, Sands did not testify at

7

petitioners' trial, thus he had no opportunity to give damaging testimony that required impeachment. Any suppression of the report by the state would have had no effect on the fairness of the trial.

(b)

The petitioners' second claim concerns a statement made to FBI officials by James Potter four years after the trial. In his statement, Potter revealed that while they were cellmates, Sands had admitted to him that the petitioners knew nothing about his plan to kill the victim. A memorandum indicates that the TBI had Potter's information as early as March 16, 1983.

At their hearing, the petitioners denied involvement in the murder of the victim. They admitted to giving false testimony at trial. They acknowledged that, at the time of trial, their cousin Larry Sharp could have testified to similar statements by Sands in which Sands claimed responsibility for the murder but that Sharp did not testify. The state questioned Ronald Dukes as follows:

> General:    So, what - of what importance is what Mr. Potter had to say -
> Petitioner:    Well, he -
> General:    I mean, he says the same thing that Larry Sharp would have said, and we talked about Larry Sharp at the first post-conviction, it hasn't changed what he knows, isn't that what Potter says - that Sands actually killed Mr. Kitts?
> Petitioner:    Well, Mr. Sands did kill Mr. Kitts. It was - you know, we feel like if the truth had been presented to the jury, all of the truth, not just a part of it - if all of the truth had been presented to the jury, that more consideration would have been given ....

The post-conviction trial court found no Brady violation as to their trial because the evidence was obtained by the state "well after the original Dukes trial." The court also held that failure to provide the information before the first post-conviction

8

hearing was not a Brady violation because the information was not exculpatory and that the jury did not hear all of the facts as a direct result of the petitioners' decision to perjure themselves at trial.

The petitioners contend that the state shirked its continuing duty, post-trial, to reveal material exculpatory evidence, i.e., the substance of Potter's statement to the FBI. They rely on the ABA Standards of Criminal Justice and the Tennessee Code of Professional Responsibility.

Relief under the Post-Conviction Procedure Act may be granted only when there has been an abridgment of a constitutional right during the course of the guilt or sentencing phase of the trial. Tenn. Code Ann. § 40-30-105 (repealed 1995). See Alley v. State, 958 S.W.2d 138, 148 (Tenn. Crim. App. 1997). The ruling in Brady does not necessarily impose a duty on the state to disclose during post-conviction proceedings exculpatory evidence discovered by the state years after trial. Even if such a duty exists, there is no error here because Brady does not apply to evidence the defense already possesses. Banks, 556 S.W.2d at 90. In this instance, the petitioners admitted at the post-conviction hearing that Sharp would have testified at trial to similar declarations by Sands.

II

Lastly, the petitioners argue that this petition should be considered a motion to reopen pursuant to Tenn. Code Ann. § 40-30-217(a)(4). The petitioners have not satisfied the procedural requirements for motions to reopen under the Post-Conviction Procedure Act of 1995. See Tenn. Code Ann. § 40-30-217(c). A motion to reopen is a limited avenue for relief and is only appropriate as follows:

> (1) The claim in the motion is based upon a final ruling of an appellate court establishing a constitutional right

9

that was not recognized as existing at the time of trial, if retrospective application of that right is required. Such motion must be filed within one (1) year of the ruling of the highest state appellate court or the United States supreme court establishing a constitutional right that was not recognized as existing at the time of trial; or

(2) The claim in the motion is based upon scientific evidence establishing that such petitioner is actually innocent of the offense or offenses for which the petitioner was convicted; or

(3) The claim asserted in the motion seeks relief from a sentence that was enhanced because of a previous conviction and such conviction in the case in which the claim is asserted was not a guilty plea with an agreed sentence, and the previous conviction has subsequently been held to be invalid, in which case the motion must be filed within one (1) year of the finality of the ruling holding the previous conviction invalid; and

(4) It appears that the facts underlying the claim, if true, would establish by clear and convincing evidence that the petitioner is entitled to have the conviction set aside or the sentence reduced.

Tenn. Code Ann. § 40-30-217 (emphasis added). To obtain relief under this section of the Act, a petitioner must satisfy the requirements set forth in any one of the first three subsections as well as those contained in the fourth subsection. Donald Wayne Easley v. State, C.C.A. No. 01C01-9609-CC-00407, slip op. at 4 (Tenn. Crim. App., at Nashville, Nov. 6, 1997). Here, the petitioners do not allege the existence of a constitutional right not recognized at the time of trial. They do not offer new scientific evidence of actual innocence nor do they claim an invalid previous conviction entitles them to relief from an enhanced sentence.

Accordingly, the judgment of the trial court is affirmed.

_____
Gary R. Wade, Judge

CONCUR:

_____
William M. Barker, Judge

_____
Curwood Witt, Judge

10