IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 22, 2005

## WILLIAM P. LIVINGSTON, JR. v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Hamblen County**
**No. 02CR178     James E. Beckner, Judge**

———————————

**No. E2004-01261-CCA-R3-PC - Filed July 21, 2005**

———————————

The petitioner, William P. Livingston, Jr., appeals the dismissal by the Hamblen County Criminal Court of his petition for post-conviction relief. After review of the record, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which DAVID G. HAYES and JERRY L. SMITH, JJ., joined.

Gerald T. Edison, Greeneville, Tennessee, for the Appellant, William P. Livingston, Jr.

Paul G. Summers, Attorney General & Reporter; Michael Markham, Assistant Attorney General; C. Berkeley Bell, Jr., District Attorney General; and Paige Miles Collins, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

The petitioner stands convicted of three counts of obtaining prescription drugs by fraud. *See* Tenn. Code Ann. § 53-11-402(a) (1999). He was sentenced as a Range II persistent offender to six years' incarceration for each count, with the sentences to be served concurrently to each other but consecutively to a previously imposed 21-year sentence.

A Hamblen County jury found the petitioner guilty of obtaining prescription drugs by fraud based on the following evidence:

> Acting on information received from a confidential informant, a drug task force officer examined prescription records pertaining to the [petitioner] from two drug stores in Hamblen County, Tennessee. The prescriptions were for various Schedule III and Schedule IV controlled substances. Expert testimony revealed that the [petitioner's] prescriptions had been xeroxed and that the refill line

had been filled in. The physician who wrote the prescriptions testified that no refills were ordered on the prescriptions when he wrote them and that no person was authorized by him to copy the original prescriptions. The evidence presented at trial indicated that the [petitioner] obtained controlled substances with prescriptions that were dated February 12 and June 11, l997, although the physician purporting to have written those prescriptions denied having written them on those dates. A former girlfriend of the [petitioner] testified that the [petitioner] had told her that he repeatedly copied prescriptions at a library and then took them to various drug stores to have them filled.

*State v. William P. Livingston*, No. E1999-01362-CCA-R3-CD, slip op. at 1-2 (Tenn. Crim. App., Knoxville, July 31, 2001), *perm. app. denied* (Tenn. 2002).

The petitioner's convictions were affirmed on direct appeal, and the supreme court denied discretionary Rule 11 review. *Id.* Thereafter, the petitioner timely filed a petition seeking post-conviction relief on September 16, 2002, claiming an illegal search and seizure and ineffective assistance of counsel at trial and on appeal. Counsel was appointed to represent the petitioner, and an evidentiary hearing was conducted.

At the post-conviction hearing, the petitioner first called Assistant Public Defender Clifton Barnes to testify. He explained that the public defender's office had been appointed originally to represent the petitioner in connection with his post-conviction petition. A conflict, however, prompted the public defender's office to withdraw from the case. Mr. Barnes testified that one of the attorneys in his office had represented Lisa Gentry, who had testified at the petitioner's trial. Mr. Barnes had Ms. Gentry's file with him; included therein was a letter dated July 11, 1997, from Ms. Gentry's public defender advising that the "District Attorney is willing (to postpone your serving of a sentence) so long as you continue to work for Officer [name deleted]. The District Attorney cannot go lower than 11 months and 29 days."

The petitioner's former trial counsel testified that the petitioner's mother retained his services for her son's defense. As counsel recalled, the state's case was circumstantial, and none of the state's witnesses had any first-hand knowledge of criminal activities on the part of the petitioner. One of the witnesses listed on the presentment was Lisa Gentry. Counsel said that he could not remember whether he interviewed her before trial.

Evidently Tommy Reagan, a forensic handwriting expert, was retained by the petitioner, and from Mr. Reagan's analysis and comparison of handwriting samples, he had

concluded that it was "[h]ighly probable that [the prescriptions] were not signed by [the petitioner]."[1] The defense called Mr. Reagan as a witness at trial and was able to elicit his opinion that "the questioned documents were not signed by [the petitioner]." Immediately thereafter, the state objected that the petitioner had failed to provide the state with reciprocal discovery regarding Mr. Reagan, and the trial court refused to allow any further questioning by the defense. Trial counsel did not dispute what had happened, but he simply did not recall why he had failed to turn over reciprocal discovery. He testified, "It would be my practice to do that, yes. It's very rare when I have something within my control which we turn over to the state, but the Rule provides that we have to, and I don't know why I didn't."

Trial counsel was asked about the status of Lisa Gentry as a witness in the case. By reviewing court records, he was able to recall that she was listed as a state witness on the presentment; the presentment showed her address as being in care of the Drug Task Force. Counsel was shown and identified a motion he filed in the case for the state to disclose any agreements with prosecution witnesses, including Lisa Gentry. Next, he was shown the July 11, 1997 letter to Ms. Gentry communicating the state's offer to postpone service of her sentence; counsel testified that he had never seen the letter and was never advised of the state's offer.

Although listed as a state's witness, Ms. Gentry did not testify at trial for the state. Instead, trial counsel called her as a defense witness to elicit the following testimony, which appears in the original trial transcript, a copy of which is an exhibit in the post-conviction record:

Q     Hi.

A     Hello.

Q     You're Lisa Gentry?

A     Yes, I am.

Q     Ms. Gentry, let me ask you a question if I may. Have you ever lived at 1700 Beacon Road, in Talbott, Tennessee?

A     Yes, I have.

Q     No further questions. Thank you, ma'am.

---

[1] From the discussion in the post-conviction record among the witness, counsel, and the court, substantial confusion existed regarding what the petitioner may have signed and what the expert had reviewed. Customarily, the only individual who signs the actual "prescription" is the issuing physician. Oftentimes, however, the person who picks up the prescription medicine will be asked to sign a pharmacy "log."

At the post-conviction hearing, counsel explained that his purpose in calling Ms. Gentry was to elicit her address, which was the same address listed on the prescriptions, thereby suggesting to the jury that she, not the petitioner, was responsible for obtaining the prescriptions. As it turned out in the trial, the state's cross-examination of Ms. Gentry was devastating for the defense. Ms. Gentry testified that the petitioner had photocopied prescriptions at the county library, and her testimony provided a direct link between the petitioner and the prescriptions.

Regarding pretrial motions, counsel testified that the petitioner had filed numerous *pro se* motions, which counsel adopted out of an abundance of caution. Counsel recalled that a search warrant suppression motion had been filed, but he did not believe that the state's case involved items taken from the home. He did remember that the petitioner wanted the items that were seized returned, but counsel said that he did not represent the petitioner on that matter.

The petitioner called Shirley Stewart as a witness at the evidentiary hearing. Ms. Stewart knew the petitioner and Ms. Gentry. She had been interviewed by trial counsel, but she was not called as a witness at petitioner's trial. Ms. Stewart testified at the post-conviction hearing that in 1998 she was addicted to drugs and that she and Ms. Gentry "ran around together . . . to get drugs and things of that nature." According to Ms. Stewart, Ms. Gentry told her about taking one of the petitioner's prescriptions, photocopying it, and using the photocopies to obtain refills. Ms. Gentry also told her that "the first one, though, that [the petitioner] knew that down [sic] -- that [the petitioner] had sent her."

On cross-examination, the state asked the witness to clarify about "the first one." Ms. Stewart testified that Ms. Gentry "didn't say that he took her to get the prescription," but rather "[t]hat he knew she was going to get it." Ms. Stewart affirmed that she provided the same information to the petitioner's counsel who did not call her as a witness.

Patricia Collier testified that in 1998 she was acquainted with both the petitioner and Ms. Gentry. Ms. Collier recalled a conversation with Ms. Gentry wherein Ms. Gentry disclosed that she had been photocopying the petitioner's prescriptions at the library and taking them to the pharmacy to be filled. Ms. Collier said that she told the petitioner about the conversation prior to his trial, but she was never interviewed by trial counsel.

The petitioner took the stand and testified that he currently was on parole from his fraudulent prescription drug convictions and sentences. He was asked about his ineffective assistance of counsel claim relating to the handwriting expert. The petitioner said that he hired Mr. Reagan and that trial counsel was aware that the expert had been retained. According to the petitioner, he received Mr. Reagan's report in early 1998 several months prior to trial. The petitioner believed that Mr. Reagan had separately mailed a copy of the report to trial counsel. The petitioner testified that "the day of trial . . . [he] asked [counsel] about Tommy [Reagan], and [counsel] said that he hadn't called him, so [the petitioner] had [his] sister-in-law go out to the pay phone and call him, and he came on up that afternoon."

As to the issue surrounding Lisa Gentry, the petitioner explained by way of background that after having surgery in 1997, Ms. Gentry stayed with him as a care giver; she cooked for the petitioner and would take his prescriptions to the pharmacy to have them filled. The petitioner denied ever living at 1700 Beacon Lane, which was the address connected with the prescriptions. He agreed that eliciting the fact that Ms. Gentry lived at that address was important, but he also maintained that other ways existed to present that information. The petitioner testified that Ms. Gentry had an extensive criminal history, but the state neither disclosed that history nor advised him about the prosecution's offer of cooperation extended to Ms. Gentry.

The petitioner's complaint about counsel's failure to litigate the suppression of items seized pursuant to a search warrant proved to be unrelated to the criminal charges. The court inquired if any of the evidence had been used against the petitioner in the criminal case, and the petitioner responded that none of it had. We discern from the petitioner's remarks that his concern was focused on having his property returned to him.

The petitioner's next complaint dealt with counsel's failure to present witnesses who could have testified favorably for the petitioner that Ms. Gentry had admitted to copying and passing the prescriptions. The petitioner listed the names of people other than Shirley Stewart and Patricia Collier who would have given basically the same testimony as the two women who testified at the post-conviction hearing. The petitioner also felt that trial counsel had been ineffective because he never discussed trial strategies with the petitioner.

The petitioner concluded his examination by making brief comments that primarily focused on issues that had been raised in his motion for new trial. The state's cross-examination was brief and developed little relevant information.

The post-conviction court took the matter under advisement and later issued a written memorandum and order dismissing the petition. The court found that trial counsel invested considerable time in preparing the case for trial and on the appeal. The court noted that discovery was obtained and all appropriate motions were filed and heard, and it also noted that counsel's trial tactics were reasonable.

On appeal, the petitioner raises two issues. He asks this court to find that trial counsel rendered constitutionally ineffective assistance by calling Ms. Gentry as a witness and by not interviewing or calling Patricia Collier as a witness. He further complains, without seeking a specific remedy, that the post-conviction court failed to consider or rule upon his allegation that the prosecution had withheld evidence of an agreement between law enforcement and Ms. Gentry.

In post-conviction proceedings, the petitioner has the burden of proving by clear and convincing evidence the claims raised. Tenn. Code Ann. § 40-30-110(f) (2003). On appeal, the lower court's findings of fact are reviewed *de novo* with a presumption of correctness that may only be overcome if the evidence preponderates against those findings. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

When a petitioner challenges the effective assistance of counsel in a post-conviction proceeding, he has the burden of establishing (1) deficient representation and (2) prejudice resulting from that deficiency. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 2064 (1984); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Deficient representation occurs when counsel provides assistance that falls below the range of competence demanded of attorneys in criminal cases. *Bankston v. State*, 815 S.W.2d 213, 215 (Tenn. Crim. App. 1991). Prejudice is the reasonable likelihood that, but for deficient representation, the outcome of the proceedings would have been different. *Overton v. State*, 874 S.W.2d 6, 11 (Tenn. 1994). On review, there is a strong presumption of satisfactory representation. *Barr v. State*, 910 S.W.2d 462, 464 (Tenn. Crim. App. 1995). Because a petitioner must establish both deficient representation and prejudice therefrom, relief may be denied when proof of either is deficient. *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996).

We quote the full extent of the petitioner's argument on appeal directed to his claim of ineffective assistance of counsel:

> Trial counsel could not remember interviewing Lisa Gentry. The trial judge opined that she was [the] only direct evidence against [the petitioner]. Clearly, if he had adequately prepared for the trial of this matter and had interviewed her he would have discovered her involvement with the Drug Task Force and would not have called her as a defense witness.
>
> Trial counsel neither interview[ed] nor called Patricia Collier as a witness in the initial criminal trial. If he had adequately prepared[,] her testimony would have been helpful in impeaching Lisa Gentry. Further, Patricia Collier's testimony would have assisted the trier of fact to have better knowledge of who[] committed the crimes the [petitioner] was accused of.

We begin with trial counsel's decision to call Ms. Gentry as a witness. Regardless whether trial counsel remembered having interviewed Ms. Gentry pretrial, the petitioner specifically recalled and so testified, "I know [counsel] went and interviewed her, and he asked me the day of court should he use her, and I told him I said, You're my lawyer, use your opinion." Furthermore, the petitioner testified that he and his attorney had definitely discussed calling Ms. Gentry as a witness. The petitioner said that he "under[stood] the state had subpoenaed her, too, and then we subpoenaed her, mainly over the address on there and to present her police record."

The petitioner fails to explain why foreknowledge of Ms. Gentry's involvement with the Drug Task Force would have changed the decision to call her as a defense witness. The petitioner testified that one of the reasons Ms. Gentry was called as a witness was to "present her police record." Her involvement with the Drug Task Force would have served the same or a similar purpose in putting forth her police record. To be sure, in hindsight the decision to call Ms. Gentry

as a defense witness created a windfall for the state in bolstering its case, but an informed, reasonable tactical decision made after consultation with the client does not in this case rise to the level of ineffective assistance of counsel after the tactic "backfires," so to speak.

As for trial counsel's failure to call Patricia Collier, the petitioner argues that her testimony would have been helpful in impeaching Lisa Gentry. Inasmuch as the petitioner complains, in the first instance, that counsel never should have called Ms. Gentry as a witness, we fail to grasp the logic of his complaint related to Ms. Collier. In addition, even if the failure to call Ms. Collier was somehow professionally unreasonable, the petitioner has failed to make his case for prejudice resulting from counsel's actions.

Without question, Ms. Gentry's testimony was devastating for the defense. Her testimony, however, was not the only evidence linking the petitioner to the prescriptions. It is, in our opinion, an overstatement to say that the state's case rose or fell on Ms. Gentry's testimony. At the original trial, the state presented testimony from Steve Rippetoe, the owner and pharmacist at Howard's pharmacy. The state elicited from Mr. Rippetoe that the petitioner personally came into the pharmacy for about eight months to have his prescription refilled. Mr. Rippetoe said that the reason he remembered the petitioner was that the petitioner always talked about the good pharmacy prices and about Mr. Rippetoe's mother using the petitioner's property to sell flea market items. Mr. Rippetoe had no recollection of anyone else ever coming in and picking up prescriptions for the petitioner or bringing in a prescription to be filled.

Robert Cantwell, a pharmacist with Minnis Drug Store, also testified for the state. Mr. Cantwell was personally acquainted with the petitioner and recalled him coming in the pharmacy to get prescriptions filled.

In summary, the petitioner has failed to carry his burden to show entitlement to post-conviction relief based on ineffective assistance of counsel.

The other issue raised by the petitioner is that the post-conviction court failed to address all of the issues that he raised. Specifically, he complains that the court overlooked his due process claim regarding the state's failure to disclose the offer made to Ms. Gentry to postpone service of her sentence as long as she continued to work with one of the law enforcement officers.

The petitioner is correct that the court did not specifically address his claim that the state withheld exculpatory evidence. The post-conviction court's order does reference Ms. Gentry's cooperation with the Drug Task Force "in exchange for a plea agreement in another case," but it does not consider the merits of the claim. In our opinion, this claim does not entitle the petitioner to relief.

The duty to disclose exculpatory evidence extends to all "favorable information" irrespective of whether the evidence is admissible at trial. *State v. Robinson*, 146 S.W.3d 469, 512 (Tenn. 2004); *Johnson v. State*, 38 S.W.3d 52, 56 (Tenn. 2001). The prosecution's duty to disclose

*Brady* material also applies to evidence affecting the credibility of a government witness, including evidence of any agreement or promise of leniency given to the witness in exchange for favorable testimony against an accused. *Johnson*, 38 S.W.3d at 56. Although *Brady* does not require the state to investigate for the defendant, it does burden the prosecution with the responsibility of disclosing statements of witnesses favorable to the defense. *State v. Reynolds*, 671 S.W.2d 854, 856 (Tenn. Crim. App. 1984). However, this duty does not extend to information that the defense already possesses, or is able to obtain, or to information not in the possession or control of the prosecution or another governmental agency. *State v. Marshall*, 845 S.W.2d 228, 233 (Tenn. Crim. App. 1992).

In order to prove a due process violation under *Brady*, the defendant must show the state suppressed "material" information. *State v. Edgin*, 902 S.W.2d 387, 389 (Tenn. 1995). Undisclosed information is material when "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 390. To establish materiality, an accused is not required to demonstrate "by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal." *Kyles v. Whitley*, 514 U.S. 419, 434, 115 S. Ct. 1555, 1565-66 (1995). Therefore, "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Id.*, 115 S. Ct. at 1566.

In this case, the only evidence in the record consists of the letter sent by Ms. Gentry's counsel that communicated an offer by the district attorney general to postpone serving her sentence as long as she continued to work for one of the law enforcement officers and that advised Ms. Gentry that the district attorney general would not "go lower than 11 months and 29 days." The letter concludes by instructing Ms. Gentry to contact counsel immediately.

There is no evidence in the record whether Ms. Gentry accepted the offer. Also, the record fails to disclose the nature of the charge for which the state was offering 11 months and 29 days and for which the state was offering to postpone service. The record, in other words, does not establish that an agreement existed between the state and Ms. Gentry. Furthermore, nothing ties any alleged agreement or promise of leniency to providing favorable testimony against the petitioner. Indeed, the state did not call Ms. Gentry as a witness. Without more, we are unpersuaded that the petitioner's due process claim merits relief.

For all the foregoing reasons, we affirm the dismissal of the petition for post-conviction relief.

_____
JAMES CURWOOD WITT, JR., JUDGE