CLARENCE ELBERT BRANCH, Plaintiff in Error, v. STATE OF TENNESSEE, Defendant in Error.
—469 S.W.2d 533.

November 25, 1969.

Certiorari Denied by Supreme Court April 6, 1970.

H. H. McKnight, Memphis, for plaintiff in error.

George F. McCanless, Attorney General, Robert H. Roberts, Assistant Attorney General, Nashville, Sam J. Cantanzaro, Assistant District Attorney General, Memphis, for defendant in error.

OLIVER, J.   The defendant below, Clarence Elbert Branch, was convicted in the Criminal Court of Shelby County of second degree murder for which he was sentenced to imprisonment for 10 years in the State Penitentiary, and for carrying the pistol used in the killing, for which he was sentenced to pay a fine of $50 and to be imprisoned in the County Workhouse for 11 months and 29 days. He is in this Court upon an appeal in the nature of a writ of error duly perfected.

The defendant's defense was self-defense. He and defense witnesses testified that on the night of the homicide, in the "Blue Room" of a cafe, the deceased provoked an argument with the defendant about whether the

defendant owed him a dollar; that during this argument the deceased pulled a knife on the defendant; that shortly thereafter when the defendant left the cafe the deceased followed him outside and was chasing him brandishing a knife when the defendant shot him.

The operator of the cafe testified for the State that she searched both the deceased and the defendant as they first entered the "Blue Room" that night and that neither of them had a weapon. Another State witness testified that she was in an automobile parked across the street and saw the shooting but did not see the deceased with a knife. An investigating police officer found no weapon at the scene.

■ In one Assignment of Error the defendant insists, as he did in his motion for a new trial, that the State knew that a knife was found at the scene of the killing but withheld that fact from the defendant and thus suppressed material evidence that should have been made available to him, and that he was thereby deprived of his constitutional right to a fair trial.

■ During the trial, when the court permitted jurors to ask questions ( a perilous practice which trial courts should scrupulously avoid), a juror asked the defendant what happened to the deceased's knife and whether it was ever found. The defendant replied that a woman sent the knife "up there." The court reminded the defendant that he could not testify as to what someone might have told him. The juror persisted in his inquiry. The court then asked the defendant if he knew what happened to the knife, to which the defendant replied, "The only way I

can answer this question is that a lady was watching the place, she sent a knife—'' The court interrupted the defendant to remind him that he was not permitted to go into what someone told him.

In his argument to the jury, the District Attorney General referred to the defendant's testimony about the deceased pulling a knife inside the cafe during the initial argument, and about the deceased chasing him outside with a knife when the defendant shot him.

In the hearing upon the defendant's motion for a new trial, the Assistant District Attorney General stated that his file on the case disclosed that an unidentified colored man turned a knife into the police department ''* * * that they said was found''; and that ''We do have a knife that he brought to the Police Department, but we did not have this man's name, the only thing he brought; he gave it to two officers up there, so that evidence would not have been admissible, because we could not get it in through the officers he brought it to; they could not testify what this man had told them.'' The Assistant District Attorney General conceded in his statement at the new trial hearing that if police officers had found a knife at the scene, and if he in turn had suppressed that fact, defense counsel would have a valid point.

So, the fact emerged that before and during the trial the Assistant District Attorney General knew a knife purportedly found at the scene had been turned into the police and it was available to him, and he did not disclose the fact to defense counsel.

Considering that the whole defense was self-defense, defense against a pursuing knife-brandishing assailant, the fact that the Assistant District Attorney General had not explored the origin of the knife, or its possible connection with the homicide, and consequently felt that he had no admissible evidence regarding it, could not possibly justify him in withholding and suppressing from the defendant the fact that a knife purportedly found at the scene had been turned in to the police. That information could very well have enabled defense counsel to conduct further and possibly fruitful investigation regarding the finding of the knife. The mere fact that the police did not get the name of the person who delivered the knife to them could not in any way affect the duty of the Assistant District Attorney General to inform the defendant or his counsel of the fact.

It is, therefore, no answer to say, as the State insists and as the Assistant District Attorney General argued before the trial court, that the State's information about the knife turned in to the police department was hearsay and inadmissible in evidence on that account.

The law concerning suppression by the prosecution of evidence favorable to an accused is well settled. In Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, a post-conviction proceeding in which the prosecution's suppression of a confession by the petitioner's confederate was the principal question, the Court said:

"We agree with the Court of Appeals that suppression of this confession was a violation of the Due Process Clause of the Fourteenth Amendment. The Court

of Appeals relied in the main on two decisions from the Third Circuit Court of Appeals—United States ex rel. Almeida v. Baldi, 195 F.2d 815, 33 A.L.R.2d 1407, and United States ex rel. Thompson v. Dye, 221 F.2d 763 —which, we agree, state the correct constitutional rule.

"This ruling is an extension of Mooney v. Holohan, 294 U.S. 103, 112, 55 S.Ct. 340, 342, 70 L.Ed. 791, where the Court ruled on what nondisclosure by a prosecutor violates due process:

'It is a requirement that cannot be deemed to be satisfied by mere notice and hearing if a state has contrived a conviction through the pretense of a trial which in truth is but used as a means of depriving a defendant of liberty through a deliberate deception of court and jury by the presentation of testimony known to be perjured. Such a contrivance by a state to procure the conviction and imprisonment of a defendant is as inconsistent with the rudimentary demands of justice as is the obtaining of a like result by intimidation.'

"In Pyle v. Kansas, 317 U.S. 213, 215-216, 63 S.Ct. 177, 178, 87 L.Ed. 214, we phrased the rule in broader terms:

'Petitioner's papers are inexpertly drawn, but they do set forth allegations that his imprisonment resulted from perjured testimony, knowingly used by the State authorities to obtain his conviction, and from the deliberate suppression by those same authorities of evidence favorable to him. These allegations sufficiently charge a deprivation of rights guar-

anteed by the Federal Constitution, and, if proven, would entitle petitioner to release from his present custody. Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 70 L.Ed. 791.'

"The Third Circuit in the Baldi case construed that statement in Pyle v. Kansas to mean that the 'suppression of evidence favorable' to the accused was itself sufficient to amount to a denial of due process. 195 F.2d at 820. In Napue v. Illinois, 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217, we extended the test formu- lated in Mooney v. Holohan when we said: 'The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears.' And see Alcorta v. Texas, 355 U.S. 28, 78 S.Ct. 103, 2 L.Ed.2d 9; Wilde v. Wyoming, 362 U.S. 607, 80 S.Ct. 900, 4 L.Ed.2d 985. Cf. Durley v. Mayo, 351 U.S. 277, 285, 76 S.Ct. 806, 811, 100 L.Ed. 1178 (dissenting opinion).

"We now hold that the suppression by the prosecution of evidence favorable to an accused upon request vio- lates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.

"The principle of Mooney v. Holohan is not punish- ment of society for misdeeds of a prosecutor but avoid- ance of an unfair trial to the accused. Society wins not only when the guilty are convicted but when crimi- nal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly. An inscription on the walls of the Department of Jus-

tice states the proposition candidly for the federal domain: 'The United States wins its point whenever justice is done its citizens in the courts.' A prosecution that withholds evidence on demand of an accused which, if made available, would tend to exculpate him or reduce the penalty helps shape a trial that bears heavily on the defendant. That casts the prosecutor in the role of an architect of a proceeding that does not comport with standards of justice, even though, as in the present case, his action is not 'the result of guile,' to use the words of the Court of Appeals. 226 Md. [422], at 427, 174 A.2d [167], at 169.''

For other applications of the rule see Ashley v. Texas, 319 F.2d 80 (5th Cir. 1963), and United States ex rel. Meers v. Wilkins, 326 F.2d 135 (2nd Cir. 1964).

In Giles v. Maryland, 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737, the Court held, in a concurring opinion by Mr. Justice Fortas, that in a State criminal proceeding the prosecution's duty under the Fourteenth Amendment to disclose material facts favoᵢable to the defense is not excused by the fact that such evidence would not be admissible at the trial. In a petition brought under the Maryland Post-Conviction Procedure Act, the petitioners, who were convicted of rape, alleged that the prosecution suppressed facts relating to the girl's character and mental condition which would have supported their testimony and discredited hers. Mr. Justice Brennan said in the plurality opinion:

''In the end, any allegation of suppression boils down to an assessment of what the State knows at trial in com-

parison to the knowledge held by the defense. It would seem that the Maryland Court of Appeals would reverse as unconstitutional a conviction in a trial that included suppression of evidence tending to prove nymphomania, or more comprehensively, suppression of evidence concerning the mental condition of the complaining witness and the interrelated issues of her consent and credibility.''

In his concurring opinion in Giles, *supra,* Mr. Justice Fortas said this:

''I do not agree that the State may be excused from its duty to disclose material facts known to it prior to trial solely because of a conclusion that they would not be admissible at trial. The State's obligation is not to convict, but to see that, so far as possible, truth emerges. This is also the ultimate statement of responsibility to provide a fair trial under the Due Process Clause of the Fourteenth Amendment. No respectable interest of the State is served by its concealment of information which is material, generously conceived, to the case, including all possible defenses.''

The rule is stated as follows in 21 Am.Jur.2d, Criminal Law, sec. 225:

''Suppression or withholding by the state of material evidence exculpatory to the accused is a violation of due process, irrespective of the good or bad faith of the prosecution. The rule applies whether the suppressed evidence is material to guilt or to punishment, and even though it goes only to the credibility of a witness.

And there is some indication that the rule may be applicable where the suppression is negligent rather than wilful.''

█ The nondisclosure and suppression of evidence or information favorable to the defense, or which might be useful to the defense, even though there is no showing of the prosecution's bad faith, offends those fundamental constitutional concepts of a fair trial so essential to due process of law. It is well to remember here what the United States Supreme Court said in Coppedge v. United States, 369 U.S. 438, 449, 82 S.Ct. 917, 923, 8 L.Ed.2d 21:

''* * * When society acts to deprive one of its members of his life, liberty or property, it takes its most awesome steps. No general respect for, nor adherence to, the law as a whole can well be expected without judicial recognition of the paramount need for prompt, eminently fair and sober criminal law procedures. The methods we employ in the enforcement of our criminal law have aptly been called the measures by which the quality of our civilization may be judged.''

The other Assignments of Error are pretermitted. When the question determined is decisive, it is unnecessary to consider and decide other questions. Grove v. State, 211 Tenn. 414, 365 S.W.2d 292; Bell v. Hackler, 211 Tenn. 518, 365 S.W.2d 900.

The judgment of the trial court is reversed and the case is remanded thereto for a new trial.

This case was heard and submitted to the Court prior to enactment of Chapter 330 of the Public Acts of 1969 increasing the membership of the Court.

Walker, P.J., and Galbreath, J., concur.