# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

### FEBRUARY 1999 SESSION

FILED

June 18, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Appellee, | ) | C.C.A. No. 01C01-9712-CR-00561 |
| | ) | |
| vs. | ) | Davidson County |
| | ) | |
| DENNY JAMES McABEE, | ) | Hon. J. Randall Wyatt, Judge |
| | ) | |
| Appellant. | ) | (Aggravated Robbery) |
| | ) | |

FOR THE APPELLANT:

**S. RAY WHITE (on appeal)**
Attorney at Law
9856 S. Windrow Rd.
Rockvale, TN  37153

**RAY CULP (at motion for new trial)**
Attorney at Law
439 Battle Ave.
Franklin, TN  37064

**PAUL BRUNO (at trial)**
Attorney at Law
222 Second Ave. North, Ste. 350
Nashville, TN  37201

**RAYBURN McGOWAN, JR. (at trial)**
Attorney at Law
222 Second Ave. North, Ste. 416
Nashville, TN  37201

FOR THE APPELLEE:

**JOHN KNOX WALKUP**
Attorney General & Reporter

**TIMOTHY F. BEHAN**
Assistant Attorney General
425 Fifth Ave. N., 2d Floor
Nashville, TN  37243-0493

**VICTOR S. JOHNSON, III**
District Attorney General

**LILA STATOM**
Asst. District Attomey General
222 Second Ave North, Ste. 500
Nashville, TN  37201

OPINION FILED:_____

AFFIRMED

**JAMES CURWOOD WITT, JR., JUDGE**

## OPINION

The defendant, Denny James McAbee, stands convicted of aggravated robbery for the carjacking of Earl Glen "Bubba" Lackey, Jr. on April 19, 1996. McAbee received his conviction at the conclusion of a jury trial in the Davidson County Criminal Court. He was subsequently sentenced to serve fourteen years in the Department of Correction consecutively to a previously imposed sentence of six years and one day for an aggravated burglary conviction. In this direct appeal, McAbee raises two issues of alleged error. First, he claims the photographic lineup conducted was improper. Second, he claims prosecutorial misconduct in witness intimidation and in failing to disclose exculpatory information during discovery. Following a review of the record, the briefs and oral arguments of the parties, and the law, we affirm the judgment of the trial court.

### I

In his first issue, McAbee alleges the trial court erred in failing to suppress evidence regarding a photographic lineup from which the victim selected him as the perpetrator of the crime. The essence of his complaint is that the lineup was "a result of the efforts of an officer with a personal score to settle" who manipulated the photographs to the defendant's prejudice.

A patrol officer assigned to the area in which the crime took place conducted an investigation which led him to suspect the defendant as the perpetrator. With the assistance of a detective, the patrol officer assembled a photographic lineup consisting of pictures of the defendant and five other individuals who shared similar characteristics with the defendant. This was approximately the seventh photographic lineup the patrol officer had assembled. The officer took the lineup to the victim's home and asked the victim whether anyone in it looked familiar from the robbery. The victim immediately selected the defendant's photograph.

2

At the suppression hearing, the defendant claimed that his photograph was much more recent than those of the other individuals represented. He argued that the officer put the lineup together himself, rather than leaving that to the detective assigned to the case, to ensure that the victim made an identification of the defendant.

"To be admissible as evidence, an identification must not have been conducted in such an impermissibly suggestive manner as to create a substantial likelihood of irreparable misidentification." State v. Cribbs, 967 S.W.2d 773, 794 (Tenn.) (citing Simmons v. United States, 390 U.S. 377, 88 S. Ct. 967 (1968)), cert denied, --- U.S. ---, 119 S. Ct. 343 (1998). In Neil v. Biggers, 409 U.S. 188, 93 S. Ct. 375 (1972), the Supreme Court identified five factors for assessing reliability of an identification. They are: (1) the opportunity of the witness to view the perpetrator at the time of the offense, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the perpetrator, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the time between the crime and the identification.

The victim's identification of the defendant via photographic lineup easily passes the Neil v. Biggers assessment. The victim had an opportunity to observe the defendant for a period of time at close range. The crime took place during daylight hours. The victim's testimony indicates he paid attention to the perpetrator, who was making him nervous and ultimately threatened him with a gun. The initial description the victim gave of the perpetrator supports the identification he made of the defendant from the lineup.[1] By all accounts, the victim chose the

---

[1]The victim testified at the suppression hearing and at trial that he initially described the perpetrator's hair as dark brown or black, which is consistent with the defendant's photograph from the lineup. Other physical characteristics described by the victim match the defendant's photograph. However, as

defendant from the lineup quickly and was confident in his identification. The lineup was conducted on May 7, 1996, a brief time after the April 19, 1996 crime.

In this appeal, the defendant argues that the officer who prepared and conducted the photo lineup had a vendetta against the defendant that should be considered in assessing the fairness of the procedure. The problem with this argument is that the defendant offered no proof whatsoever at the suppression hearing of any vendetta. It was not until trial that the defendant presented this evidence through an admitted drug-abusing witness who claimed she had been intimate with the officer. She testified that the officer frequently denigrated the defendant and the witness' friendship with him. She claimed the officer asked her questions about the defendant and made statements that he was going to see the defendant put in jail.

This evidence came too late to benefit the defendant in his quest for suppression.[2] If the defendant desired to have the trial court consider the officer's alleged vendetta against the defendant in conjunction with the motion to suppress, he should have presented this evidence at the suppression hearing.[3] In fact, the

discussed in section II.B. below, the police report completed by the first officer to respond to the crime scene recounted that the perpetrator had "BL" hair, which the reporting officer testified stood for "blond." The information from the police report was not introduced until trial, and according to the defense, never revealed during pre-trial discovery. See section II.B., infra. Even if the evidence from the police report had been available to the defense at the time of the suppression hearing, the victim was positive in his lineup identification. Further, use of the abbreviation "BL" could be ambiguous, as it represents the first two letters of both "blond" and "black."

[2]Furthermore, the verdict may be viewed as signifying that its veracity was discounted by the jury.

[3]We acknowledge our supreme court's recent ruling that the appellate courts may consider evidence presented at trial, as well as at the suppression hearing, in evaluating the propriety of a trial court's ruling that a search warrant was validly executed. See State v. Henning, 975 S.W.2d 290 (Tenn. 1998). We decline, however, to apply that case to the situation at bar. First, the defendant does not seek the benefit of the Henning ruling; he has wholly ignored the fact

4

evidence was not presented until the defendant's case-in-chief, *after* the evidence of the victim's identification of the defendant from the photo lineup had already been admitted. Cf. State v. Sims, 952 S.W.2d 286, 290 (Mo. App. 1997) (in determining propriety of trial court's ruling on suppression motion, appellate court may consider evidence presented at hearing on motion to suppress and introduced at trial *prior to* introduction of evidence of pretrial identification sought to be suppressed).[4]

Notwithstanding the defendant's failure to present the evidence of the alleged vendetta in time for it to be considered in conjunction with the motion to suppress, the evidence adds nothing to the defendant's argument for suppression. Even assuming the officer may have been unusually zealous in preparing a photo lineup and presenting it to the victim, there is no indication the officer suggested that the victim should pick the defendant from the lineup. Moreover, we disagree with the defendant's characterization that the officer otherwise manipulated the process through the selection of photographs. Contrary to the defendant's arguments, his picture is not distinctive as compared with the others in the lineup due to age of the photographs, presence of acne, and hair color.

Accordingly, the trial court did not err in denying the defendant's motion to suppress the pretrial lineup.

## II

The defendant raises two claims of prosecutorial misconduct. The first

---

that the evidence of the alleged vendetta was not presented until trial. Second, Henning dealt with a search warrant, not pretrial identification. Third, the trial evidence considered in Henning was used by the appellate court to support the correctness of the trial court's ruling, not to give the non-prevailing party a second chance to make his case for suppression.

[4]Sims is cited in the Tennessee Supreme Court's Henning decision discussed supra at note 3. See Henning, 975 S.W.2d at 298.

is an appropriate issue to be viewed through the framework for prosecutorial misconduct claims. The second is more properly considered as a potential violation of Brady v. Maryland.

## A

The defendant contends that prosecutorial misconduct occurred when a potential defense witness was intimidated and ultimately changed her prospective trial testimony after she was visited in jail by the investigating police officer.[5]

When an issue of prosecutorial misconduct is presented, the proper inquiry is "whether the improper conduct could have affected the verdict to the prejudice of the defendant." Harrington v. State, 215 Tenn. 338, 340, 385 S.W.2d 758, 759 (1965).

At the motion for new trial, the defendant's lead trial attorney testified that he had met with the incarcerated witness prior to trial, and she had corroborated another defense witness' report of having had an affair with the police officer in question. Further, counsel testified that the incarcerated witness told him the officer had pulled her over on many occasions to inquire about the defendant's whereabouts. Defendant's lead counsel visited the incarcerated witness a few days later, at which time she said the officer had been to see her since counsel's last visit. Counsel testified that the witness said she would not give testimony unfavorable to the officer because she had pending charges and thought he had influence over the disposition of these charges. Because he was uncertain after this meeting how this witness would testify, lead counsel elected not to call this

---

[5]The state's argument, consisting of lengthy quotation from the trial court's order, a cursory statement that "the trial court is correct," and lacking citation to authority other than that contained in the quoted material from the trial court's order, is of little assistance to this court in probing the merits of this issue.

witness at trial. Counsel also testified that the witness told him the officer had taped their conversation. Despite counsel's requests to the state for a copy of the tape, he had never received one.

The defendant's trial co-counsel testified that he was present during lead counsel's latter conversation with the incarcerated witness. He testified that although the incarcerated witness did not *per se* recant what he understood her prospective testimony would be, she minimized her knowledge of relevant information.

The incarcerated witness testified at the motion for new trial. She acknowledged having told the defendant's trial counsel that the defense witness had confided that she and the investigating officer had a sexual relationship. However, the incarcerated witness testified that she never believed anything the defense witness told her. The incarcerated witness testified that she had seen a police car at the defense witness' house only two times, and one of those times she was certain that the officer present was not the investigating officer. She denied that the investigating officer had ever stopped her to inquire about the defendant's whereabouts. She admitted that the investigating officer visited her in jail; however, she denied that she felt threatened by him. To the contrary, she claimed she did not want to testify because she knew the defendant was guilty and did not want to assist his defense.

The officer in question testified that he met with the incarcerated witness in keeping with his normal practice of interviewing all witnesses. He talked with the witness about her prospective testimony; however, he denied threatening her. He testified he told the witness to tell the truth. The officer testified that a tape recording was made of his conversation with this witness. He gave the tape to the

7

assistant district attorney assigned to the case but had no knowledge of its whereabouts at the time the motion for new trial was heard.[6]

From this evidence, the trial court found "no credible evidence of coercion or intimidation by the investigating officer . . . and no evidence of misconduct by the district attorney." Specifically, the court found no evidence that the officer threatened the incarcerated witness or coerced her into changing her testimony. Furthermore, the court found that the defendant had failed to demonstrate any prejudice from any of the foregoing allegations.

On appellate review, the defendant has not convinced us of the error of the trial court's ruling. The evidence presented at the hearing on the motion for new trial, while unusual, fails to demonstrate any wrongdoing by the state.

**B**

The defendant also claims the prosecution withheld exculpatory evidence in the form of a police report indicating the perpetrator's hair was blond, rather than the dark brown color of the defendant's hair.

In Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963), the United States Supreme Court held that the prosecution has the duty to furnish exculpatory evidence to the accused upon request. Any "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady, 373 U.S. at 87, 83 S. Ct. at 1196-97. The duty to disclose extends to all "favorable information" regardless of whether the

---

[6]The tape was not received as evidence at that hearing nor is it a part of the record on appeal.

evidence is admissible at trial. State v. Marshall, 845 S.W.2d 228, 232-33 (Tenn. Crim. App. 1992); Branch v. State, 4 Tenn. Crim. App. 164, 168, 469 S.W.2d 533, 536 (1969). In United States v. Bagley, 473 U.S. 667, 676, 105 S. Ct. 3375, 3380 (1985), the Supreme Court held that both exculpatory and impeachment evidence fall under the Brady rule. Cf. Giglio v. United States, 405 U.S. 150, 92 S. Ct. 763 (1972) (nondisclosure of state's deal with witness violated defendant's due process rights).

Before an accused is entitled to relief under Brady, he must establish several prerequisites: (a) the prosecution must have suppressed the evidence; (b) the evidence suppressed must have been favorable to the accused; and (c) the evidence must have been material. See Bagley, 473 U.S. at 674-75, 105 S. Ct. at 3379-80; Brady, 373 U.S. at 87, 83 S. Ct. at 1196-97; Workman v. State, 868 S.W.2d 705, 709 (Tenn. Crim. App. 1993); State v. Marshall, 845 S.W.2d 228, 232; Strouth v. State, 755 S.W.2d 819, 828 (Tenn. Crim. App. 1986). In State v. Spurlock, this court recognized a fourth prerequisite to relief, that "the accused must make a proper request for the production of the evidence, unless the evidence, when viewed by the prosecution, is obviously exculpatory in nature and will be helpful to the accused." State v. Spurlock, 874 S.W.2d 602, 609 (Tenn. Crim. App. 1993) (citations omitted). The defendant bears the burden of proving a Brady violation by a preponderance of the evidence. State v. Edgin, 902 S.W.2d 387, 389 (Tenn. 1995).

In the case at bar, the initial police report indicated the suspect's hair was "BL." The officer who prepared the report testified "BL" stood for blond and that the victim had described the perpetrator's hair as "blondish." On the other hand, the victim testified that he had initially described the perpetrator's hair as dark brown or black. The defendant's hair is dark brown.

9

During the investigation, the victim identified two individuals whom he suspected may have been involved. Both of these individuals have blond hair. Further, an officer testified that he had arrested these individuals for stealing a vehicle and burning it prior to the victim's car being stolen and burned. The victim testified, however, that he grew up with one of these individuals and was sure that this person had not been the carjacker, although he thought this person might have had someone else commit the crime. An officer interviewed the individuals identified by the victim as potential suspects, and he received information implicating the defendant from one of these individuals. Based upon this information, the officer prepared the photo lineup, choosing a photograph of the defendant and five individuals who shared similar characteristics with the defendant. Each of the individuals depicted in the lineup had brown hair.

At the motion for new trial, McAbee's trial counsel testified that he did not learn about the police report describing the suspect's hair with the abbreviation "BL" until the trial was underway. As a result of the belated disclosure, he claimed he was unable to investigate.

The trial court found that the defense failed to carry its burden of proving a Brady violation.

We begin our analysis with the fourth prerequisite for relief. It appears that discovery was conducted in this case; however, if "a proper request for the production of the evidence" was made by the defense, it has not been included in the record on appeal. See Spurlock, 874 S.W.2d at 609. Thus, we direct our inquiry to whether "the evidence, when viewed by the prosecution, is obviously exculpatory in nature and will be helpful to the accused." Id. The evidence in the case at bar does not fulfill this criteria. The victim's hair color was only one of

10

several physical characteristics described by the victim on the day of the crime. The description he recounted at trial that he had given on the day of the crime is remarkably similar to the defendant's photograph in the lineup. The victim's testimony that he described the perpetrator as having dark brown or black hair was at odds with the officer's *testimony* that the victim had said the perpetrator had blond hair; however, the victim's testimony that he described the perpetrator as having possibly black hair was not contradicted *per se by* the report, which depicted the perpetrator's hair as "BL". The inconsistent evidence of the perpetrator's hair color was fully probed by the defense at trial. The defendant claims on appeal that he was "denied . . . the possibility of developing other credible suspects" at trial by the non-disclosure of this evidence. Although he had the opportunity at the hearing on the motion for new trial to prove that such evidence could have been developed, he failed to carry that burden.

Furthermore, although the evidence was suppressed, the information in the report is not material. See Bagley, 473 U.S. at 674-75, 105 S. Ct. at 3379-80. In that regard, "the question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." Kyles v. Whitley, 514 U.S. 419, 434, 115 S. Ct. 1555, 1566 (1995). In this case, the jury had before it evidence of the inconsistency between the police report and the victim's account of a suspect with dark brown or black hair, as well as evidence that the possible suspects named by the victim had blond hair. Notwithstanding, the jury convicted the defendant. At the motion for new trial, the defendant had the opportunity to prove any matter which the state's failure to disclose the police report deprived him of proving at trial, yet he offered no evidence supporting a finding of materiality and undermining confidence in the verdict.

11

It bears repeating that the evidence of hair color was but a portion of the victim's physical description of the perpetrator. In addition, the victim chose the defendant from a photographic lineup. Viewed in context of all of the evidence presented, the report indicating the perpetrator had "BL" hair was not material under the standard of Kyles. Cf. State v. Beal, 614 S.W.2d 77, 80-81 (Tenn. Crim. App. 1981) (due process rule of Brady not violated where minor inconsistencies in initial description of perpetrator not disclosed during discovery but revealed during pretrial suppression hearing and exposed by defense counsel at trial).

The trial court correctly determined that no Brady violation had been demonstrated.

Finding no error requiring reversal, we affirm the judgment of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE

CONCUR:


_____
DAVID G. HAYES, JUDGE


_____
JOHN EVERETT WILLIAMS, JUDGE