IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
April 27, 2022 Session

## STATE OF TENNESSEE v. WALLACE WADE TIDWELL[1]

**Appeal from the Circuit Court for Anderson County**
**No. B6C00551        Donald Ray Elledge, Judge**

_____

### No. E2021-00711-CCA-R3-CD

_____

Following a trial, an Anderson County jury convicted Defendant, Wallace Wade Tidwell, of aggravated robbery, and Defendant was sentenced, as a career offender, to thirty years' incarceration. On appeal, Defendant contends that the trial court erred in sentencing him as a career offender because the State failed to file a proper notice under Tennessee Code Annotated section 40-35-202(a). Defendant further contends that the trial court committed per se reversible error by instructing jurors that they could not question witnesses. Following a thorough review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and TIMOTHY L. EASTER, J., joined.

Ann C. Short and Donald A. Bosch (at sentencing and on appeal), Knoxville, Tennessee; J. Thomas Marshall, Jr., District Public Defender; and Ann D. Coria, Assistant District Public Defender (at trial), for the appellant, Wallace Wade Tidwell.

Herbert H. Slatery III, Attorney General and Reporter; Edwin Alan Groves, Jr., Assistant Attorney General; Dave S. Clark, District Attorney General; and Anthony Craighead, Assistant District Attorney General, for the appellee, State of Tennessee.

---

[1] In the original indictment and superseding indictment, Defendant's name was "Wallace Wade Tidwell." At numerous places in the record, including the notice of appeal, the name "Wallace Wade Tidwell III" is used. In the body of the opinion, we will use the name as it appears in the indictment.

## OPINION

## I. Factual and Procedural Background

On July 11, 2017, the Anderson County Grand Jury indicted Defendant for aggravated robbery, a Class B felony, in case number B6C00551. The indictment alleged that Defendant:

on or about June 13, 2015[,] before the finding of this indictment, in the County aforesaid, did then and there unlawfully, intentionally, knowingly, and violently, take from the person of Theresa Spaw, through the use of a deadly weapon, to wit: a gun, in violation of TCA 39-13-402; against the peace and dignity of the State of Tennessee.

On August 29, 2017, the State filed a "Notice of Intention to Use Prior Bad Acts for Impeachment and Enhancement of Sentence" ("August 2017 notice"). In the August 2017 notice, the State identified Defendant's prior felony convictions, the dates of those convictions, and the courts of conviction, as follows:

CRIMINAL COURT, ANDERSON COUNTY, TENNESSEE:

| | | |
|---|---|---|
| A4CR0095 | Robbery | 12-10-04 |
| A4CR0261 | Robbery | 12-10-04 |
| A9CR0220 | Robbery | 6-17-10 |
| A9CR-221 | Robbery | 6-17-10 |

CRIMINAL COURT, KNOX COUNTY, TENNESSEE:

| | | |
|---|---|---|
| 92133 | Robbery (2 counts) | 7-16-09 |
| 08490 | Attempted Aggravated Robbery | 2-10-05 |
| 76350 | Facilitation Poss[.], Mfg., Sale Sch[.] III | 2-10-05 |
| 80491 | Robbery | 2-10-05 |

The August 2017 notice indicated that the State would use any of the above prior convictions "for purposes of impeachment and enhancement of sentence."

On June 5, 2018, the grand jury issued a superseding indictment under the same case number that included additional allegations regarding the property taken from the victim and the weapon used during the aggravated robbery. Specifically, the superseding indictment stated that Defendant:

on or about June 13, 2015, before the finding of this indictment, in the County aforesaid, did then and there unlawfully, intentionally, knowingly, and violently, take from the person of Theresa Spaw *property, to wit: cash*, through the use of a deadly weapon *or an article used or fashioned to lead the victim to believe it to be a deadly weapon*, to wit: a gun, in violation of TCA 39-13-402; against the peace and dignity of the State of Tennessee.

The State did not file a second notice of enhanced punishment following the issuance of the superseding indictment.

A trial commenced on April 9, 2019. During its preliminary instructions to the jury, the trial court stated: "You may not ask questions. It is the responsibility of the attorneys to present the evidence. You must decide the case on the evidence presented to you."[2]

Theresa Spaw testified that, on the night of June 13, 2015, she was working as a clerk at the Shell gas station on Charles Seivers Boulevard in Clinton. Ms. Spaw stated that she was outside smoking a cigarette when Defendant pulled up in his black truck "with yellow stripes on it." Ms. Spaw put out her cigarette and walked back into the store with Defendant. Defendant told Ms. Spaw that he needed to use the restroom, and Ms. Spaw went behind the check-out counter. Ms. Spaw testified that, when Defendant came out of the restroom, he approached her and ordered that she give him the money out of the cash register, telling her that he would not hurt her and that "insurance [would] pay for it." When Ms. Spaw hesitated, Defendant lifted his shirt, and she saw the butt of a gun in his waistband. Ms. Spaw testified that she believed Defendant had a gun and that it scared her "really bad." She said:

> I opened the drawer and pretty much was giving [Defendant] the money out of the register and then after I handed it to him he asked me to come around the counter. And we have a hallway to go to the restrooms and he made me go around the counter and he told me to count to a hundred[.]

Ms. Spaw said, "[I]t really scared me when he wanted me to come around the counter. It was like you have got your money, just go. Leave me alone. I did what you asked." She said that she gave Defendant "[t]wenties, tens, fives, [and] ones" from the cash drawer and that she pushed a panic button when she was gathering the cash out of the register. She said that police arrived quickly after Defendant fled and that she told them what happened. She said that she was "shaking" as she recounted the offense. Ms. Spaw

---

[2] This language is included as "Option A" in the Tennessee Pattern Jury Instructions for general opening instructions. T.P.I.—Crim. 1.00.

testified that she did not know the exact amount taken from the register until her boss arrived at the store following the incident and that it was "around eight hundred dollars."

Ms. Spaw explained that the Shell station had video surveillance cameras, and she identified two video recordings that depicted the events of June 13. The video recordings were played for the jury, and Ms. Spaw identified Defendant on the recordings.

Sergeant Michael Jones of the Clinton Police Department testified that he was on patrol on the night of June 13, 2015, checking on local businesses when he pulled into the parking lot of the Shell station. Sergeant Jones said that Ms. Spaw ran "from the back of the store up to the front of the store with a scared look on her face[,]" and she told him that she had "just been robbed." He testified that Ms. Spaw was shaking as she recounted what happened. Sergeant Jones notified police dispatch and began collecting additional information from Ms. Spaw, including a description of the suspect. He shut down the store and did not let anyone enter the premises. He also instructed Ms. Spaw to contact the owner of the store so that detectives could have access to the video surveillance cameras at the store. Sergeant Jones said that detectives arrived at the scene about thirty minutes later. On cross-examination, Sergeant Jones stated that he could not recall if Ms. Spaw said that the suspect had a weapon but agreed that his report regarding the robbery did not include a mention of a weapon.

Chief Vaughn Becker of the Clinton Police Department testified that he responded to the Shell station where he took photographs and collected evidence. Chief Becker said that he reviewed the video recordings of the robbery from the store. From the video recordings, Chief Becker observed that the suspect's vehicle was unique; it was a black truck with a "bright yellow strip down it." Chief Becker said that he and other officers drove around a "circuit" of hotels looking for the truck and found it at the Scottish Inn on Callahan in Knoxville about an hour after the offense.

At the Scottish Inn, Chief Becker spoke to the hotel clerk and learned Defendant's room number. Chief Becker said that he and Sheriff Russell Barker knocked on the door and tried, unsuccessfully, to get Defendant to open the door and come out. They called out officers from the Knoxville Police Department, and several hours later, they unlocked the door and made entry into the hotel room. Chief Becker stated that, during a search of the room, he found a screwdriver in a belt. They also found cash, including thirty-four dollars in his wallet and four hundred ninety dollars "in loose cash between the mattress and box springs." Chief Becker testified that Defendant was arrested and taken to the Clinton Police Department for an interview.

Anderson County Sheriff Russell Barker testified that, at the time of the offense, he worked as a detective sergeant with the Clinton Police Department. Sheriff Barker said

that he responded to the scene at the Shell station where he interviewed Ms. Spaw. He recalled that Ms. Spaw was "rattled" and "very shaken by what she had experienced." Ms. Spaw provided a description of the suspect, and after their preliminary investigation at the scene, Sheriff Barker and Chief Becker decided to check hotels within the city limits and further down the interstate. Sheriff Barker stated that he located the suspect's truck in a parking lot of a hotel off Callahan. Sheriff Barker ran the tag on the truck and learned that it was registered to Defendant. After speaking to the hotel clerk, Sheriff Barker discovered that Defendant was a registered guest at the hotel. Sheriff Barker went to Defendant's hotel room and knocked on the door. He testified, "[Defendant] came to the door and did not answer it, but he pulled the curtain back to the side and he and I had a brief conversation[.]" Sheriff Barker positively identified Defendant as the robbery suspect that he observed on the footage from the video surveillance cameras at the Shell station. Sheriff Barker testified that, despite numerous attempts by law enforcement to get Defendant to exit the hotel room, Defendant would not open the door. He said that officers entered the room using a key about two and a half hours later and that Defendant was taken into custody.

Sheriff Barker testified that he interviewed Defendant at the Clinton Police Department after Defendant waived his *Miranda* rights. He said that the interview had been recorded, and the video recording of Defendant's interview was played for the jury. In his interview, Defendant said that he was suicidal, on drugs, and driving around when he stopped at the Shell station in Clinton and demanded money from the clerk. After the clerk complied, Defendant asked her to go to the back of the store. He said that he told the clerk that he would not hurt her and that the money was insured. He said that the clerk did as he asked and that he left the store and drove to the Scottish Inn where he waited on law enforcement. Defendant said that he had wanted police to kill him.

On cross-examination, Sheriff Barker agreed that, during the interview, Defendant told him that his mental state was not good and that he had wanted the police to kill him. Defendant also told him that he had not taken his medication for "some time." Sheriff Barker was shown a photograph of the screwdriver found in Defendant's hotel room and was asked, "Have you ever seen, in your law enforcement experience, a gun handle that was rounded on the end like that?" He responded, "Actually I have. Like a derringer. They tend to be kind of round, the handles, and . . . you can change those handles and grips out to give them different looks."

Following deliberations, the jury found Defendant guilty as charged.

On July 10, 2019, the State filed a "Notice of Enhancement Factors[,]" which stated that Defendant:

- 5 -

pursuant to T.C.A. 40-35-114, meets the following enhancement factor(s) for purposes of sentencing:

1. [] Defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range. The State submits [D]efendant is a CAREER OFFENDER[.]

CRIMINAL COURT, ANDERSON COUNTY, TENNESSEE:

|  |  | Date of Offense | Date of Conviction |
|---|---|---|---|
| A4CR0095 | Robbery | 10-16-03 | 12-10-04 |
| A4CR0261 | Robbery | 6-25-04 | 12-10-04 |
| A9CR0220 | Robbery | 1-24-09 | 6-17-10 |
| A9CR0221 | Robbery | 1-24-09 | 6-17-10 |

CRIMINAL COURT, KNOX COUNTY, TENNESSEE:

|  |  | Date of Offense | Date of Conviction |
|---|---|---|---|
| 92133 | Robbery[] | 1-23-09 | 7-16-09 |
| 92133 | Robbery[] | 1-23-09 | 7-16-09 |
| 08490 | Att[.] Agg[.] Robbery | 6-25-04 | 2-10-05 |
| 80491 | Robbery | 6-25-04 | 2-10-05 |
| 76350 | Att[.] Poss[.], Mfg., Sale Sch[.] III | 9-11-01 | 2-10-05 |

[D]efendant is convicted of Aggravated Robbery. A Class B Felony. [D]efendant has six (6) separate Class C felony convictions. This places him in the Career Offender class. Therefore, the State is asking that he be sentence[d] to thirty years (30) in the Tennessee Department of Correction[]. This is to be served at 60%.

On November 15, 2019, Defendant filed a "Motion to Strike State's July 10, 2019, Notice that Defendant [] is a Career Offender and Request for Sentencing as a Range I Standard Offender." In the motion to strike, Defendant argued that the original indictment in the case was "fatally flawed" because it failed to allege that anything was taken from the victim and "factually flawed" because it alleged that Defendant used a gun to commit the offense. Defendant asserted that, although the superseding indictment cured the flaws in the original indictment, the State did not file a new notice of its intention to seek sentencing of Defendant as a career offender until months after Defendant's trial. Defendant argued that, pursuant to Tennessee Code Annotated section 40-35-202(a), "the [State's] July 10,

2019 notice is ineffective to allow this Court to impose any sentence outside the standard offender range." Defendant asserted that the State's August 2017 notice "related to the original indictment . . . not the superseding indictment upon which [Defendant] was tried" and because the original indictment did not charge an offense, the August 2017 notice "was a nullity." He further asserted that the August 2017 notice failed to provide required information and contained no clear expression of the State's intention to seek sentencing outside of the standard offender range. Finally, Defendant argued that empirical evidence from court filings in the district demonstrated that the August 2017 notice was not intended or designed to operate as a notice of enhanced punishment.

The State filed a response, arguing that the August 2017 notice was effective because it put Defendant on notice that the State intended to seek enhanced punishment under the superseding indictment, which charged the same offense as the original indictment. The State also argued that the notice substantially complied with the requirements in Tennessee Code Annotated section 40-35-202(a). The State asserted that its "Notice of Enhancement Factors[,]" filed on July 10, 2019, was intended to be a post-trial sentencing brief for the court.

At a sentencing hearing, the State presented Defendant's presentence report through the testimony of a probation officer, which included a statement from Ms. Spaw regarding the negative effects the robbery had on her. The State additionally presented certified copies of Defendant's prior felony convictions.[3] Following argument of counsel, the trial court denied Defendant's motion to strike, finding that the State's August 2017 notice of enhanced punishment was effective and that it substantially complied with the requirements of the notice statute. The trial court further found that, for purposes of sentence enhancement, Defendant had prior felony convictions for five counts of robbery and one count of attempted aggravated robbery—all Class C felonies. Accordingly, the court sentenced Defendant, as a career offender, to serve thirty years in the Tennessee Department of Correction with an eighty-five percent release eligibility. *See* Tenn. Code Ann. §§ 40-35-108(a)(1), (c); 40-35-112(c)(2); 40-35-501(k)(1) (2021).

Defendant filed a timely motion for new trial, in which Defendant argued, among other things, that the trial court erroneously instructed the jury that it could not ask questions of witnesses. Following a hearing, the trial court denied the motion for new trial in a written order. This timely appeal follows.

---

[3] Defendant offered as an exhibit certified copies of notices that had been filed in other Tennessee jurisdictions, namely Marshall County, Wilson County, Knox County, Shelby County, and Davidson County. In separate exhibits, Defendant presented a list and examination of all Anderson County Circuit Court criminal cases from 2018, wherein the State filed the same-type notice as filed in Defendant's case. The trial court ruled that these exhibits were not relevant and received them for identification purposes only.

## II. Analysis

### *A. Notice Under Tennessee Code Annotated Section 40-35-202(a)*

Defendant contends that the trial court erred in sentencing him as a career offender because the State failed to provide adequate pretrial notice of its intent to seek enhanced punishment under Tennessee Code Annotated section 40-35-202(a). Defendant argues that the State's August 2017 notice was a nullity because the original indictment failed to charge an offense and that the State was required to file a new notice after the superseding indictment was issued. Defendant further argues that the August 2017 notice failed to contain the information required by section 40-35-202(a) and that it contained no clear expression of the State's intention to seek sentencing outside of the standard offender range. He asserts, therefore, that he is entitled to resentencing as a standard Range I offender.

The State responds that the trial court properly sentenced Defendant as a career offender. The State argues that the August 2017 notice was not a nullity, that it substantially complied with the relevant statute, and that Defendant failed to show prejudice.

Tennessee Code Annotated section 40-35-202(a) provides as follows:

> If the district attorney general believes that a defendant should be sentenced as a multiple, persistent or career offender, the district attorney general shall file a statement thereof with the court and defense counsel not less than ten (10) days before trial or acceptance of a guilty plea; provided, that notice may be waived by the defendant in writing with the consent of the district attorney general and the court accepting the plea. The statement, which shall not be made known to the jury determining the guilt or innocence of the defendant on the primary offense, must set forth the nature of the prior felony convictions, the dates of the convictions and the identity of the courts of the convictions.

Tenn. Code Ann. § 40-35-202(a) (2021).

As our supreme court has explained:

> The purpose of the statutory notice of intent to seek enhanced sentencing is to (a) provide fair notice to an accused that he/she is exposed to other than standard sentencing, (b) to facilitate plea bargaining, (c) to enable the

- 8 -

accused to make an informed decision before entering a guilty plea, and (d) to a certain extent, to aid in trial strategy.

*State v. Livingston*, 197 S.W.3d 710, 712 (Tenn. 2006) (citing *State v. Adams*, 788 S.W.2d 557, 559 (Tenn. 1990); *State v. Taylor*, 63 S.W.3d 400, 412 (Tenn. Crim. App. 2001)). In *Livingston*, our supreme court held that the notice statute requires the State to file a (1) "written notice," (2) "clearly expressing the State's intention to seek sentencing outside of the standard offender range," (3) "setting forth the nature of the prior felony conviction, the dates of the convictions, and the identity of the courts of the convictions." *Livingston*, 197 S.W.3d at 713-14 (citing Tenn. Code Ann. § 40-35-202(a)). This court has concluded that a notice satisfies its purposes when the defendant is not misled or surprised by the State's decision to seek enhanced sentencing. *See State v. Chase*, 873 S.W.2d 7, 9 (Tenn. Crim. App. 1993).

When a detail of the required information in a notice is omitted or incorrect, "the inquiry should be whether the notice was materially misleading." *Adams*, 788 S.W.2d at 559. Moreover, when the State has "substantially complied" with the notice requirement, the defendant has a duty "to inquire about any ambiguities in the notice and to show that any problem with the notice prejudiced the defendant." *State v. Williams*, 558 S.W.3d 633, 640 (Tenn. 2018) (citing *State v. Patterson*, 538 S.W.3d 431, 438 (Tenn. 2017)); *see also Adams*, 788 S.W.2d at 559. However, "[i]f a notice document is so defective as to amount to no notice at all, then the State has not met its burden, and the defendant does not have to show prejudice." *Williams*, 558 S.W.3d at 640 (citing *Adams*, 788 S.W.2d at 559). The sufficiency of the State's notice of enhanced punishment is a question of law subject to de novo review. *Id.* at 639.

When a superseding indictment charges a defendant with the "same crime," the State is not required to file a new notice of enhanced punishment. *Livingston*, 197 S.W.3d at 714; *State v. Carter*, 121 S.W.3d 579, 584-86 (Tenn. 2003); *Chase*, 873 S.W.2d at 9. As explained by our supreme court, "where both indictments charge the same crime, the defendant has no reason to believe enhanced sentencing would not apply to a conviction under either indictment." *Carter*, 121 S.W.3d at 586. Whether a notice of enhanced punishment is effective following the issuance of a superseding indictment is a question of law subject to de novo review. *Livingston*, 197 S.W.3d at 712; *Carter*, 121 S.W.3d at 584.

### 1. Original and Superseding Indictments

Defendant first contends that the original indictment in this case was fatally flawed and failed to state an offense because it omitted an element of the offense, *i.e.*, it did not specify what was taken from the victim. However, the original indictment was not defective simply because it failed to specify that cash was taken from the victim. Our

supreme court has determined that specific reference to the statute defining an offense is sufficient to place a defendant on notice of the offense with which he is charged. *State v. Duncan*, 505 S.W.3d 480, 488 (Tenn. 2016) (citing *State v. Hammonds*, 30 S.W.3d 294, 300 (Tenn. 2000)). Here, the original indictment cited the statute defining aggravated robbery, which was constitutionally sufficient to give Defendant notice of the charged offense. *See e.g., Charles A. Guess v. Shawn Phillips, Warden*, No. W2019-01347-CCA-R3-HC, 2020 WL 1875233, at *2 (Tenn. Crim. App. Apr. 15, 2020) (holding that an indictment put the defendant on notice that he was being charged with especially aggravated robbery because it cited the statute defining the offense), *perm. app. denied* (Tenn. Sept. 14, 2020). Accordingly, Defendant's contention that the August 2017 notice was a nullity is unavailing.

Moreover, the superseding indictment in this case was clearly a re-indictment charging Defendant with the same crime as in the original indictment. Both indictments were filed under the same case number; they applied to the same victim, the same offense date, and same defendant and charged the same crime of aggravated robbery. Thus, the August 2017 notice, filed in the original indictment, gave Defendant fair warning that the State intended to seek an enhanced sentence for that crime. *See Chase*, 873 S.W.2d at 9.

## 2. Substantial Compliance

Upon review of the August 2017 notice, we agree with the trial court that it substantially complied with Tennessee Code Annotated section 40-35-202(a). It was a written notice that clearly expressed the State's intent to use Defendant's prior convictions "for purposes of . . . enhancement of sentence." It set forth the nature of the prior felony convictions, the case numbers, the dates of conviction, the courts of the convictions, and the notice was filed over a year and a half before Defendant's trial. While Defendant correctly points out that the State did not specify in the notice what offender status it was seeking, the notice listed enough prior convictions to qualify Defendant as a career offender. Based on the information provided in the August 2017 notice, defense counsel would have been able to ascertain Defendant's offender status if convicted of aggravated robbery as charged in the indictment. *See* Tenn. Code Ann. § 40-35-108 (setting forth definition of career offender). Moreover, this court has previously found substantial compliance in cases where the notice does not specify which enhanced offender classification the State intends to seek but does identify the prior convictions the State intends to rely. *See, e.g., State v. Justin Hadley*, No. W2014-00985-CCA-R3-CD, 2015 WL 5001166, at *6 (Tenn. Crim. App. Aug. 21, 2015) (finding substantial compliance where generic notice form did not identify range but did contain the defendant's prior convictions), *perm. app. denied* (Tenn. Aug. 21, 2015); *State v. Norman Branch*, No. W2013-00964-CCA-R3-CD, 2014 WL 3744322, at *11-12 (Tenn. Crim. App. July 28, 2014) (finding substantial compliance where notice did not identify range but did contain

- 10 -

prior convictions), *perm. app. denied* (Tenn. Dec. 19, 2014); *State v. Ronnie R. Charleston*, No. M2005-02255-CCA-R3-CD, 2007 WL 57074, at *10 (Tenn. Crim. App. Jan. 5, 2007) (finding substantial compliance where notice did not specify range sought by the State but listed prior convictions), *perm. app. denied* (Tenn. June 18, 2007).

Defendant argues that the August 2017 notice did not comply with section 40-35-202(a) because it failed to contain the offense classification for each of his prior convictions, failed to "identify precisely which convictions might trigger sentencing outside the standard offender range," and failed to cite to the relevant statute. The notice statute, however, does not require that level of specificity. *See* Tenn. Code Ann. § 40-35-202(a) (2021); *Livingston*, 197 S.W.3d at 713-14. Defendant also argues that the August 2017 notice was deficient because the State combined the notice with its notice of impeachment. Although filing a separate, properly captioned notice of enhanced punishment is "the better practice," our supreme court has repeatedly "decline[d] to mandate a particular form" because the notice statute itself "does not prescribe a particular form[.]" *Patterson*, 538 S.W.3d at 442.

Finally, Defendant argues that the State's notice did not clearly express the State's intention to seek sentencing outside of the standard offender range, asserting that the notice's reference to "'enhancement of sentence' . . . logically refers to enhancement within the range." We cannot agree with this interpretation of the State's notice. First, it is inconsistent with the language of the Sentencing Commission Comments for section 40-35-202, which explains that "[s]ubsection (a) requires that the district attorney general file a notice with the court and defense counsel setting forth the nature of any prior convictions which will later be utilized for *sentencing enhancement purposes*." Tenn. Code Ann. § 40-35-202, *Sentencing Comm'n Cmnts.* It is also inconsistent with language used in prior opinions discussing similar notices under section 40-35-202(a). *See, e.g., Livingston,* 197 S.W.3d at 712 (explaining the purpose of the statutory notice of "intent to seek enhanced sentencing"); *Carter*, 121 S.W.3d at 591 (holding that "the notice of intent to seek enhanced sentencing" was sufficient as to defendant's possession charge); *Taylor*, 63 S.W.3d at 413 (holding that "enhanced punishment" in the State's notice "logically means punishment as a multiple, persistent, or career offender"); *State v. Jonathan C. Buckner*, No. M2016-01162-CCA-R3-CD, 2017 WL 3476068, at *17 (Tenn. Crim. App. Aug. 14, 2017) (noting that the title of the State's notice "show[ed] that the purpose was to provide notice to the defense of the intention to seek an enhanced sentence upon conviction"), *perm. app. denied* (Tenn. Dec. 6, 2017). Finally, Defendant's interpretation is inconsistent with the fact the State is not required to give pretrial notice for purposes of enhancement within a sentence range. *See* Tenn. Code Ann. § 40-35-114 (2021).

Because we conclude that the State's notice substantially complied with Tennessee Code Annotated section 40-35-202(a), the burden shifted to Defendant to "inquire about

- 11 -

any ambiguities in the notice and to show that any problem with the notice prejudiced the defendant." *Williams*, 558 S.W.3d at 640. The record, however, does not reflect that Defendant sought to clarify any ambiguities in the August 2017 notice. Additionally, Defendant did not dispute the accuracy of the convictions listed in the notice, and he has failed to establish that he was prejudiced by any alleged defect in the notice. Defendant is not entitled to relief.

### B. Juror Questions

Defendant contends that the trial court erred when it instructed the jurors that they may not ask questions. He contends that the trial court's instruction was per se error and that prejudice should be presumed. The State responds that the trial court properly exercised its discretion by prohibiting jurors from questioning witnesses.

The practice of permitting jurors to ask questions of witnesses during trial was once strongly disfavored in this state, with our courts once "describing the procedure as 'a perilous practice which trial courts should scrupulously avoid.'" *State v. James*, 315 S.W.3d 440, 458 (Tenn. 2010) (quoting *Branch v. State*, 469 S.W.2d 533, 534 (Tenn. Crim. App. 1969)). However, in 2003, the Tennessee Rules of Criminal Procedure were amended to include Rule 24.1(c), which provides that a trial court "may permit a juror to ask a question of a witness" and prescribes a procedure for the submission of juror questions:

> (1) Written Submission of Questions. The juror shall put the question in writing and submit it to the judge through a court officer at the end of a witness' testimony. A juror's question shall be anonymous and the juror's name shall not be included in the question.

> (2) Procedure After Submission. The judge shall review all such questions and, outside the hearing of the jury, shall consult the parties about whether the question should be asked. The judge may ask the juror's question in whole or part and may change the wording of the question before asking it. The judge may permit counsel to ask the question in its original or amended form in whole or part.

> (3) Jury Instructions. When juror questions are permitted, the court shall instruct jurors early in the trial about the mechanics of asking a question and to give no meaning to the fact that the judge chose not to ask a question or altered the wording of a question submitted by a juror.

Tenn. R. Crim. P. 24.1(c)(1)-(3); *see also James*, 315 S.W.3d at 458 (noting that the adoption of Rule 24.1(c) changed the policy of discouraging questions by jurors). The

- 12 -

Advisory Commission Comment for Rule 24.1 states that Rule 24.1(c) "gives the court the discretion to allow jurors to ask questions of witnesses" and explains that the rule was "designed to assist jurors in their understanding of evidence and to make them feel more involved in the trial process." Tenn. R. Crim. P. 24.1, *Advisory Comm'n Cmnt.*

"Generally, the propriety, scope, manner and control of the examination of witnesses is a matter within the discretion of the trial judge, subject to appellate review for abuse of discretion." *James*, 315 S.W.3d at 460 (internal quotations omitted). A reviewing court will not find error "[a]bsent a clear abuse of the discretionary authority of the trial judge, one that manifestly prejudices the rights of a defendant[.]" *Id.* An abuse of discretion occurs when the trial court applies an incorrect legal standard, reaches an illogical conclusion, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party. *State v. Clark*, 452 S.W.3d 268, 287 (Tenn. 2014) (citing *State v. Banks,* 271 S.W.3d 90, 116 (Tenn. 2008)).

Defendant contends that the trial court committed per se reversible error by not allowing jurors to ask questions of witnesses. By its plain language, Rule 24.1(c) grants the trial court the discretion to permit a juror to ask a question of a witness; it does not mandate that the court allow such questioning, however. Tenn. R. Crim. P. 24.1(c). The trial court's instruction that jurors may not ask questions is consistent with the court's discretionary authority under Rule 24.1(c) and consistent with the trial court's discretion in the "propriety, scope, manner and control of the examination of witnesses[.]" *James*, 315 S.W.3d at 460.

Defendant asserts that the trial court's discretion under Rule 24.1(c) is limited to the "form and substance of the questions" from jurors. We disagree. Rule 24.1(c) vests trial courts with the authority to "permit a juror to ask a question of a witness" and then sets out the procedure that must be followed if a court allows jurors to submit questions. Tenn. R. Crim. P. 24.1(c)(1)-(2). Finally, the rule states that, "[w]hen questions are permitted[,]" a trial court must provide jurors with preliminary instructions on the mechanics of submitting questions. Tenn. R. Crim. P. 24.1(c)(3). The trial court's discretion under Rule 24.1(c) clearly extends to allowing or disallowing a juror to ask a question of a witness. Defendant also asserts that the trial court was "required to place on the record the reasons for any decision to tell jurors that they may not ask questions." Defendant cites no authority for this proposition, and we find none. The trial court acted within its discretion when it instructed jurors that they may not ask questions, and Defendant is not entitled to relief.

## III. Conclusion

Based on the foregoing reasons, we affirm the judgment of the trial court.

_____
ROBERT L. HOLLOWAY, JR., JUDGE